**Mary Jane LaBRIER, Plaintiff-Appellant,**

v.

**ANHEUSER FORD, INC., Gerald W. Zeiser and Everett F. Gilmour, Defendants-Respondents.**

**No. 41866.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 20, 1981.

Robert B. Hoemeke, St. Louis, for plaintiff-appellant.

Joseph H. Mueller, St. Louis, for defendants-respondents.

WEIER, Judge.

This is a suit for damages for injury caused by outrageous conduct. From a directed verdict in favor of defendants at the close of plaintiff's evidence, plaintiff appeals.

The question presented is whether plaintiff's evidence made a case of outrageous conduct. If the elements of such a case have been established by some of the evidence, then plaintiff is entitled to a reversal and remand of the case for retrial so that the issues of liability and damages can be presented to the jury. If not, then the lower court must be affirmed.

Plaintiff Mary Jane LaBrier is the wife of James LaBrier, a former employee of Anheuser Ford, Inc. Prior to April 17, 1975, Mr. LaBrier had been employed as a used car salesman by the company for about seven years. On that date he discussed his need for time away from his duties with his superiors. A doctor had advised him to take four to six weeks away from his employment. He first spoke to the general manager Mr. Zeiser who told him that if he needed rest he had some three weeks' vacation due. He then came back the next day and talked to Mr. Gilmour who was his immediate superior. The discussion centered around whether he should take sick leave or vacation time. He had some three weeks coming to him on vacation but company rules required thirty days' notice prior to taking a vacation and it was also policy that he receive his check for the time off before he left. To avoid any complications he requested that it be considered sick leave.

It had apparently been the custom to allow employees to take their demonstrator car with them on vacation but not on sick leave. On this matter after some discussion, Mr. Zeiser the manager talked to a Mr. Fritz at the company office. Zeiser then returned and told LaBrier that the company did not want him to take the car on vacation or on sick leave. But after discussing the matter with a union representative, Mr. LaBrier decided to take the automobile.

LaBrier left home the next morning about 5:30 in the demonstrator. That afternoon Mr. Zeiser and Mr. Gilmour came to the home where Mr. and Mrs. LaBrier resided. Plaintiff Mary Jane LaBrier came to the front porch and the men asked her repeatedly where her husband had gone and where the car was located. They told her that he had stolen the car and if it was not returned there would be an all-points bulletin sent to the State Highway Patrol. He would be detained and the car brought back. They kept repeating these questions and statements for approximately twenty to twenty-five minutes in a loud and angry tone of voice. Mrs. LaBrier, who had been under the care of a doctor and had been hospitalized for emotional problems for approximately two weeks in October of the preceding year, became very upset and she began to cry. Her eyes became swollen and itching and she developed a rash over her body. She had not been taking any medication prior to this event for several months. After this occurrence, however, she had to return to taking the medicine and was prevented from taking care of her household duties for several months. LaBrier returned within a day or two after he found out about the occurrence at the home and returned the automobile to the defendants.

Two other witnesses testified with regard to the confrontation on the porch between the two employees of Anheuser Ford and Mrs. LaBrier. A next door neighbor Annie McKay testified that she and her little son were sitting on the steps of her house when the two men drove up, got out of the car and walked up on the LaBrier porch. When they got real loud she could hear the conversation. One of the men kept asking where Mr. LaBrier had gone and then she heard him say: "Well, he stole the car and we are going to put an all-points bulletin out to get it back." She characterized these statements as being loud and angry. She noticed as they kept repeating the questions and asking them in a loud and angry fashion, Mrs. LaBrier became very nervous and her voice was trembling. Another neighbor Sandra Lee Rishar was in the LaBrier residence in the kitchen visiting with Mrs. LaBrier when the men came to the door. She also overheard the conversation and related that the questions and remarks of the two men became loud and she heard them say: "We need our car, we want it back, we are going to put out an all-points bulletin." She also heard them tell Mrs. LaBrier that her husband stole the car and that they wanted it. In reply Mrs. LaBrier informed them she didn't know exactly where he was and then one of them told her: "Oh, yes you do, and we want to know where he is, and we want our car."

■ Since the opinion in *Pretsky v. Southwestern Bell Telephone Company*, 396 S.W.2d 566 (Mo.1965), Missouri has recognized the tort of outrageous conduct as defined by § 46 of the Restatement (Second) of Torts wherein it is said: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." The elements of this tort are set out clearly in *Leonard v. Pioneer Finance Company*, 568 S.W.2d 937, 940[2] (Mo.App.1978). Simply stated they are: (1) Defendant's conduct must be extreme and outrageous; (2) the defendant acts in an intentional or reckless manner; and (3) by reason of said acts, plaintiff is caused to suffer severe emotional distress from which bodily harm results.

■ We first consider whether the two employees of Anheuser Ford acted in a manner that could be characterized as extreme or outrageous. If in the favorable view of plaintiff's evidence, giving plaintiff all the benefit of favorable inferences to be drawn therefrom, the question is reasonably debatable, then the issue should go to the jury. "Mere insults, indignities, inconsiderations or petty oppressions do not rise to the level of the outrageous conduct essential to plaintiff's right of recovery." *Smith v. Standard Oil, Division of Amoco Oil Company*, 567 S.W.2d 412, 416 (Mo.App.1978). As stated in *Golston v. Lincoln Cemetery, Inc.*, 573 S.W.2d 700, 705[2] (Mo.App.1978), generally a case of outrageous conduct "is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'". *See also, Pretsky v. Southwestern Bell Telephone Company, supra* at 569. Even though the facts may be scarcely overwhelming in establishing the negligent character of the act; that is, in the instant case that the conduct was overwhelmingly outrageous, if the characterization is reasonably debatable, a court cannot substitute its judgment on the facts for that of a jury. *Atkinson v. Be-Mac Transport, Inc.*, 595 S.W.2d 26, 29[5] (Mo.App.1980).

■ We believe that the action of the employees of Anheuser Ford in appearing at plaintiff's residence in the presence of two neighbors and in a loud and threatening voice attempting to harass and humiliate plaintiff by repeatedly questioning her as to the whereabouts of her husband and the demonstrator automobile and threatening to have her husband arrested by the issuance of an "all-points bulletin" to the police could be characterized as "extreme and outrageous." Defendants suggest they had a legitimate interest in determining the whereabouts of the demonstrator. We have no doubt that this is a legitimate interest, but in light of the prior condition of plaintiff as a highly emotional and easily distraught individual who had suffered severe emotional problems before this episode that had caused her to be hospitalized, a condition known to defendants, it would appear that Mr. Gilmour and Mr. Zeiser may have exceeded the bounds of normal human conduct to such a point that the jury could find them and through them defendant Anheuser Ford guilty of outrageous conduct. As is stated in Restatement (Second) of Torts, *supra*, Comment (f) to § 46, "[t]he extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know. It must be emphasized again, however, that major outrage is essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough." Mrs. LaBrier had previously lost her father and her daughter. Because of this and several other crises in the family, she had been hospitalized for two weeks because of emotional problems. Defendants Zeiser and Gilmour were both aware that she had been in the hospital. She had received a house plant

from defendant Anheuser Ford when she was in the hospital. The knowledge of her prior condition was clear.

We next test the evidence to determine whether the jury could find that the acts of Zeiser and Gilmour could be determined by the jury to be intentional or reckless as required in the second standard hereinabove set out. The requirements of what the evidence must show in justifying infliction of punitive damages for the commission of a tort are set out in *Sharp v. Robberson,* 495 S.W.2d 394, 397 (Mo.banc 1973). There the court points out that an act of negligence may manifest such reckless indifference to the rights of others that the law will imply an injury resulting from it was intentionally inflicted. It is also true that in some circumstances there may be conscious negligence that is the equivalent of intentional wrongdoing such as where the person doing the act must be conscious of his conduct and though having no specific intent to injure, must be conscious from his knowledge of the surrounding circumstances and existing conditions that his conduct will naturally or probably result in injury. It was suggested that this same standard could be applied to outrageous conduct negligence in *Golston v. Lincoln Cemetery, Inc., supra* at 705. Knowing that Mrs. LaBrier had previously had emotional problems as was shown here, it can easily be seen that defendants could be charged with intentional commission of an outrageous act or such a reckless disregard of a previously known condition so as to supply the necessary element of intentional infliction of an emotional crisis resulting in physical harm.

The last element, that of causation, would seem to be supplied by the evidence that was given by Mrs. LaBrier and by the neighbors to the effect that following the ordeal plaintiff was nervous, upset, confused and crying. During this time, the plaintiff continually dug at her face as a result of an itch that occurred under her skin. Thereafter, Mrs. Rishar a neighbor visited plaintiff almost daily to aid her in caring for her children. During that time

plaintiff would break down and cry and begin scratching her face. Mr. LaBrier also related that when he arrived home he found plaintiff in bed. She had blotches over her entire body and her eyes were swollen.

After examining the evidence and considering the case law, we have concluded that plaintiff by her evidence made a jury case. As expressed in Comment (h) of § 46, Restatement (Second) of Torts at p. 77, "[w]here reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." We are therefore constrained to reverse the judgment of the court sustaining the motion for directed verdict at the close of plaintiff's case and remand the case for new trial.

The case is reversed and remanded.

PUDLOWSKI, P.J., and GUNN, J., concur.