**Jimmie FRYE and Iris Frye, Plaintiffs-Appellants,**

v.

**CBS INC., a corporation and Allan Cohen, an individual, Defendants-Respondents.**

**No. 46758.**

Missouri Court of Appeals, Eastern District, Division Five.

April 10, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 1984.

Application to Transfer Denied July 17, 1984.

Arthur G. Muegler, Jr., St. Louis, for plaintiffs-appellants.

Michael P. Casey, St. Louis, for defendants-respondents.

PUDLOWSKI, Presiding Judge.

This case comes to the writer upon reassignment. Appellants, Jimmie and Iris Frye,[1] brought an action against respondents, CBS, Inc. and Allan Cohen, General Manager of KMOX–TV in St. Louis, Missouri, alleging damages suffered by permanent and progressive injury to the emotional and physical well being of Jimmie Frye. The trial court sustained respondent's motion for summary judgment. The principle issue on appeal is whether the trial court erred in sustaining the motion on the ground that as a matter of law there is no genuine issue as to any material fact which would support a cause of action for the intentional infliction of severe emotional harm. We affirm.

The facts are as follows:

Appellant Jimmie Frye was first employed by CBS on March 16, 1958 and was classified as "Art Director-Engineering Department-Non Technical." On April 25, 1959, appellant was reclassified as "technician." Appellant's education and training prior to 1959 had been in the area of graphic arts, television set design and media production artist. Further, appellant was primarily utilized as such between 1958 and 1972. In 1972, however, respondents reassigned appellant to "technical job functions," predominately camera operator. This reassignment to "cameraman" required standing for extended periods of time. Appellant alleged this standing has aggravated a preexisting non-work related injury, and injury of which respondent had actual knowledge.

---

1. Iris Frye's cause of action was for loss of consortium and is derivative of Jimmie Frye's cause of action.

In August 1978, appellant notified KMOX–TV that he was experiencing severe emotional distress as a result of the technical work function assignments and that he desired more graphic art assignments. Such assignments were denied. Subsequently, suit was brought. Appellants' first amended petition alleged respondents behavior as "outrageous." The petition was as follows:

1. Continuous intentional violation of Respondents' master-servant tort duty of due care toward employee Frye and vicarious liability for the intentional conduct of CBS's vice principal employees over a twelve (12) year period of time through gross administrative abuse of Respondent CBS's positional status as employer of Frye.

2. Respondents' continuous, over a twelve (12) year period, assignment of Frye to perform KMOX–TV technical engineering job function assignments knowing, at the time of assignment, that Frye did not possess the requisite training or skills to reasonably perform such technical assignments and (b) that Frye would (and was) ipso facto be subjected to reprimand and ridicule with resultant severe emotional and physical injury to Frye.

3. Respondents' continuous, over a twelve (12) year period, assignment of Frye to perform KMOX–TV technical job function assignments requiring Frye to stand prolonged periods of time knowing, at the time of assignment, (a) that Frye had a portion of his right foot amputated in 1964 and that Frye's right foot/leg was then severely injured and (b) that prolonged standing would cause Frye to experience severe pain of body and mind and further permanent injury.

4. Respondents' continuous, over a twelve (12) year period, general denial to Frye of on-air television graphic art and television set design job function assignments knowing, at the time of each denial, (a) that from 1958 to current date Frye's entire education, work experience and expertise was in the television graphics art field, (b) that Respondent CBS through KMOX–TV management continuously utilized Frye's television graphic art skills by job assignment to graphic art tasks during his 1958 through 1971 KMOX–TV employment, (c) that Frye was the most skilled KMOX–TV employee in the fields of television graphic art and television set design and (d) that Frye's KMOX–TV employee skills were limited to the television art field.

5. Respondents continuously, over a twelve (12) year period, wrongfully denied Frye KMOX–TV on-air television art graphics work opportunity by illegally appropriating and using on-air copyrighted material and other property of unrelated third persons without such third party's knowledge or consent.

6. Respondents continuously and punitively, over a twelve (12) year period of time, denied Frye a "regular" KMOX–TV work schedule, although he was reasonably entitled to same, and, instead, forced upon Frye an abusive "vacation relief" schedule carrying with it prolonged irregular hours, irregular work days and the full spectrum of television technical engineering job assignments to Frye known and calculated by Respondents to cause Frye to suffer severe physical and emotional pain, suffering and injury.

7. Respondents discriminatorily, punitively and continuously, over a ten year period of time, denied Frye a KMOX–TV work schedule giving Frye a scheduled consecutive Saturday and Sunday off work.

8. Respondents wrongfully forced Frye to accept, in the face of discharge from KMOX–TV employment, a permanent "Vacation Relief" punitive work schedule.

9. Respondents fraudulently and continuously, between January 1, 1972 to approximately 1981, misrepresented Frye's KMOX–TV work prospects.

10. Respondents continuously, over a twelve (12) year period, abusively discriminated against Frye in the general ad-

ministration of KMOX–TV employee reprimands and disciplinary actions.

11. Respondents continuously, over a twelve (12) year period, with malicious motivation, denied Frye opportunity for KMOX–TV work title and work position advancement wrongfully.

12. That, as a direct consequence of Respondents' conduct against Frye, Frye was caused to suffer the severe and permanent emotional/mental and physical injuries specifically alleged.

On December 7, 1982, the trial court entered its order and judgment sustaining respondents' motion for summary judgment.

Appellants raise two points on appeal. Appellants first contend that the trial court erred in granting summary judgment in favor of respondents because respondents failed to show that there existed no genuine issue as to any material fact. Appellants allege that the material factual questions to be determined by the jury are whether respondents' alleged conduct was extreme, outrageous and intentional and whether such conduct caused appellant Jimmie Frye severe emotional injury.

Appellants' second point alleges that the trial court erred in overruling appellants' motion to strike respondents' collective bargaining contract affirmative defenses in that appellants' cause of action arises under general liability and not from the parties' collective bargaining contract.

The law in Missouri regarding action for intentional infliction of emotional distress, commonly referred to as the test of outrage, was established in *Pretsky v. Southwestern Bell Telephone Company*, 396 S.W.2d 566 (Mo.1965).

In *Pretsky*, our Supreme Court recognized and accepted the tort of outrageous conduct as defined by § 46 of the Restatement' (Second) of Torts. The elements of this tort are: (1) Defendant's conduct must be extreme and outrageous; (2) the defendant acts in an intentional or reckless manner; and (3) by reason of said acts, plaintiff is caused to suffer severe emotion-

al distress from which bodily harm results. *LaBrier v. Anheuser Ford, Inc.*, 612 S.W.2d 790 (Mo.App.1981); *Leonard v. Pioneer Finance Company*, 568 S.W.2d 937 (Mo.App.1978). Additionally, it is for the court to determine, in the first instance, whether the defendants conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *Wilt v. Kansas City Area Transportation Authority*, 629 S.W.2d 669, 671 (Mo.App. 1982); § 46 of the Restatement (Second) of Torts, Comment (h).

Further, if in the favorable view of appellants' evidence, giving appellant all of the benefit of favorable inferences to be drawn therefrom, the question is reasonably debatable, then the issue should go to the jury. *LaBrier*. However, the conclusions of the pleader cannot be taken as true and must be disregarded. *Luster v. Columbia Mutual Insurance Company*, 624 S.W.2d 890 (Mo.App.1981).

In the instant case, appellants' petition alleged that Jimmie Frye was a graphic artist who was reassigned as a television camera operator. Further, that as a result of the change in assignments and irregular work schedules, Jimmie Frye suffered severe injury both mentally and physically.

Upon review of the enormous discovery evidence in this case, it cannot be said that the alleged conduct towards Jimmie Frye was so outrageous as to give rise to a cause for action for damages. It is not enough that respondents may have acted with an intent which is tortious or even criminal, or that they may have intended to inflict emotional distress, or even that their conduct has been characterized by "malice" or a degree of aggravation which would entitle appellants to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his

**320**

resentment against the actor, and lead him to exclaim, "outrageous!" Pretsky v. Southwestern Bell Telephone Company, *supra;* § 46 of the Restatement (Second) of Torts, Comment (d).

Under the circumstances of this case and guaged by the standard adopted in *Pretsky,* we hold as a matter of law that the alleged conduct here is not of the extreme and outrageous nature contemplated by § 46 of the Restatement (Second) of Torts. The summary judgment in favor of respondents is affirmed.

Because of our resolution, appellants' second point on appeal need not be addressed.

JAMES A. FINCH, Jr., Senior Judge, and JOHN E. PARRISH, Special Judge, concur.