WALID HINDO, Plaintiff-Appellant, v. UNIVERSITY OF HEALTH SCIENCES/CHICAGO MEDICAL SCHOOL *et al.*, Defendants-Appellees.

Second District   No. 2—92—0019

Opinion filed November 24, 1992.

Walid A. Hindo, of Northbrook, appellant *pro se*.

Marjorie S. Jacobson and Deborah M. Neyens, both of Sonnenschein, Nath & Rosenthal, of Chicago (Susan M. Benton-Powers, of counsel), for appellees.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Walid Hindo, M.D., filed a four-count complaint against defendants, University of Health Sciences/Chicago Medical School (University), Dr. Myron Winick and Dr. Marshall Falk. In count I, plaintiff alleged defendants discharged plaintiff from his position as chairman of the department of radiology at the University in retaliation for reporting a suspected fraud against the Veterans Affairs Medical Center (VAMC) by University employees. In counts II and IV, plaintiff alleged that the University and Drs. Winick and Falk, respectively, intentionally interfered with plaintiff's contract of employment with the University, causing him to be discharged. In count III, plaintiff alleged defendants Dr. Winick and the University intentionally interfered with plaintiff's contract of employment with the VAMC, causing him to be discharged. The trial court granted summary judgment in favor of defendants on all counts. Plaintiff timely appeals.

Plaintiff is a physician and a radiologist. Defendant University is a not-for-profit medical school. Defendant Dr. Marshall Falk was at all relevant times the dean and vice-president of the University. Dr. Myron Winick was the president of the University at all relevant times subsequent to January 1, 1990.

Plaintiff was hired as an associate professor by the University in October 1975. In 1981, he was promoted to full professor with tenure, a position he still holds today. The University is affiliated with the VAMC. University residents receive training at the VAMC, and certain administrative, medical and teaching personnel hold positions at both the University and the VAMC.

In October 1981, Dr. Falk appointed plaintiff chairman of the department of radiology. Plaintiff received an administrative stipend of $9,500 per year, in addition to his faculty salary. In 1983, plaintiff was appointed to the additional position of chief of radiology service at the VAMC.

Plaintiff was on sabbatical from both the University and the VAMC during 1989. On September 28, 1989, plaintiff met with Dr. Falk to discuss a "lateral career move" with the University. Plaintiff expressed a desire to have his salary increased and to develop certain projects at the University which he began while on sabbatical. In particular, plaintiff discussed his desire to pursue the creation of an applied imaging center at the University. At his deposition, plaintiff defined "lateral career move" as moving out of the chairmanship and into the imaging center. Plaintiff confirmed his intent to pursue this project in a letter to Dr. Falk dated November 17, 1989.

On January 24, 1990, upon his return from sabbatical, plaintiff submitted a proposal to Dr. Falk regarding the projects they discussed. Plaintiff proposed that from January 1, 1990, through August 31, 1990, he would receive an annual salary of $175,000, and he would continue as chairman but announce his resignation "whenever the University wishes." Also in that time period, he would resign as chief of radiology service at the VAMC. From September 1, 1990, on, plaintiff proposed an annual salary of $87,500, which would represent 50% of his former salary. His duties would include both teaching and research projects, 50% of his time to be devoted to each.

On February 7, 1990, plaintiff met with Dr. Winick to discuss his future plans. They discussed plaintiff's desire to pursue certain projects and raising plaintiff's faculty salary from $51,120 a year to $72,000 a year. Dr. Winick suggested plaintiff submit a written proposal for the applied imaging center and advised him that they would need the approval of the administration to implement the project. After that meeting, a letter was prepared by Dr. Winick's secretary and signed by the plaintiff which confirmed the substance of the meeting. The letter was addressed to Dr. Winick and provided:

"I would like to be relieved of my duties as Chairman of the Department of Radiology effective August 1, 1990, so that I can devote more time to academic interests. At that time, I will become a full time member of the faculty of UHS/The Chicago Medical School, devoting fifty percent of my time to research and fifty percent of my time for teaching and special projects to be developed between you and myself.

It is understood that I will be paid $72,000 per year, with the appropriate increases. With this letter, I am going to submit my resignation from the North Chicago Veterans Administration Medical Center effective August 1, 1990. In the interim, I will be happy to continue my duties as Chief of Radiology Service."

Following his meeting with Dr. Winick, plaintiff went to the office of Dr. Max Weil and expressed his concern that the letter might be construed as a letter of resignation. However, plaintiff took no further action in this regard and submitted his proposal for the imaging center on February 20, 1990. An *ad hoc* committee was appointed to review the proposal.

In March 1990, plaintiff met with Dr. Winick to discuss the imaging center proposal. Dr. Winick informed plaintiff some revisions were necessary before it could be submitted for approval. In his deposition, plaintiff stated he did not make the revisions because Dr. Winick indi-

cated the project would not be funded in that fiscal year. The fiscal year ended June 30, 1990, and plaintiff admitted Dr. Winick did not foreclose the possibility that the project could be funded in the next fiscal year commencing July 1, 1990.

According to plaintiff's affidavit filed in response to defendant's motion for summary judgment, plaintiff stated that on April 7, 1990, he discovered that during the time of his sabbatical false time cards had been submitted on behalf of some of the University's residents in radiology at the VAMC. Plaintiff reported the false time cards to Dr. Conrad Schwartz, associate chief of staff of the VAMC and professor at the University. Later, plaintiff informed Dr. Mitchell Rhoads, associate dean of the University, the Veterans Administration Inspector General, and the Secretary of Veterans Affairs.

In a memo dated April 12, 1990, Dr. Falk informed plaintiff he was in receipt of plaintiff's February 7, 1990, letter to Dr. Winick in which plaintiff "resigned as chairman" and that his resignation was accepted. Dr. Falk also stated he would appoint a search committee for a replacement to convene after May 1, 1990. Plaintiff responded by way of letter on April 17, 1990, in which he stated that his February 7, 1990, letter to Dr. Winick was not a letter of resignation as chairman or as chief of service. Rather, plaintiff stated the letter was a statement of what he hoped would occur and that appointing a search committee for his replacement would be premature.

Plaintiff filed a grievance with the University's faculty affairs committee on April 30, 1990. However, on August 23, 1990, the committee declined to take action on plaintiff's grievance stating in part:

"The decision of Dr. Falk to accept Dr. Hindo's resignation to the Chair of the Department of Radiology and to establish a committee to search for a new Chairperson of the Department is an administrative matter and as such falls within the privilege of the Dean of The Chicago Medical School. The position of Department Chairperson is not a faculty rank and is not covered by the University By-laws [sic]."

Article I, section E, of the University bylaws states that a faculty member who is a department chairman is deemed to have an administrative position. Article V, section A(2), specifies that the department chairman shall be recommended by the faculty executive council and, after approval by the president and board of trustees, shall be appointed by the dean. That section further specifies that "[t]he administrative position of chairman shall not be tenured."

The record discloses that plaintiff's position as chief of service of radiology at the VAMC was in jeopardy as early as January 1988. In a

document entitled "Memo to the Record," Dr. Gary Almy, chief of staff at the VAMC, stated that a meeting was held between himself, Leonard Rogers, director at the Medical Center, and plaintiff. At issue was whether plaintiff should be replaced as acting chief of radiology service. In the memo, Dr. Almy stated he informed plaintiff as acting service chief "he serves at the pleasure of the academic institutions."

Plaintiff chaired the search committee to recruit his replacement as chief of service from late in 1988 until plaintiff's sabbatical began in January 1989. On December 1, 1989, the VAMC informed plaintiff that he would be reinstated as a staff radiologist at the Great Lakes Naval Hospital upon his return from sabbatical. However, on December 28, 1989, plaintiff was notified that he would be assigned to the VAMC as a staff radiologist upon his return.

Plaintiff protested his removal as chief in a meeting with Leonard Rogers on March 8, 1990, stating that he must be reappointed chief or he would complain to the central office. At that same meeting plaintiff provided Rogers with a copy of his February 7, 1990, letter to Dr. Winick.

That same day, upon investigation into the matter, Dr. Almy discovered that the VAMC could not remove plaintiff as chief without central office approval. Leonard Rogers sent plaintiff a letter reinstating him as chief and accepting his resignation effective August 1, 1990, as per plaintiff's letter of February 7, 1990. On March 22, 1990, plaintiff sent a letter to Rogers stating his letter of February 7 was not a formal resignation, but that he planned to resign well before August 1, 1990.

On July 27, 1990, the VAMC sought central office approval for plaintiff's removal as chief and reassignment to a staff position. It received approval from the central office on August 31, 1990. On September 5, 1990, Dr. Almy met with Dr. Falk to discuss the VAMC's plans to terminate plaintiff's employment. Dr. Almy testified that the University's approval was not necessary in order for the VAMC to terminate plaintiff, but was desirable. However, Mr. Hugh Doran, who was responsible for certain administrative duties at the VAMC, stated that in cases where there is a joint appointment the affiliated medical school participates in any decision to terminate a chief of service at the VAMC. Mr. Doran stated this policy was stated in the "manual references concerning dean's committees." The record does not contain a copy of that manual. On September 17, 1990, the VAMC terminated plaintiff's appointment as chief of service effective that day, and his position as staff radiologist effective October 1, 1990.

Plaintiff filed his complaint on December 4, 1990. Defendants' motion for summary judgment was granted on December 11, 1991. On appeal plaintiff contends: (1) the trial court erred in granting summary judgment where there were genuine issues of material fact; and (2) the trial court erred in refusing to permit the discovery depositions of Drs. Winick and Falk before ruling on the summary judgment motion. We affirm.

Plaintiff argues the trial court erred in granting summary judgment because there was a genuine issue of material fact regarding whether the plaintiff resigned or was discharged from his position as chairman and as chief of service. However, even if plaintiff did not intend to resign, summary judgment was still proper for the following reasons.

A trial court should grant summary judgment where the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c).) Summary judgment is a drastic means of disposing of litigation and should be granted only when the right of the moving party is clear and free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) In ruling on a motion for summary judgment, the trial court must consider all of the evidence before it and construe it most strictly against the movant. *Butler v. Economy Fire & Casualty Co.* (1990), 199 Ill. App. 3d 1015, 1021.

■ However, the purpose of a summary judgment is not to try an issue of fact but to determine whether a triable issue of fact exists. (*Fuentes v. Lear Siegler, Inc.* (1988), 174 Ill. App. 3d 864, 866.) While a party against whom a summary judgment has been filed need not prove his case at that preliminary stage, he or she is required to present some factual basis that would arguably entitle him or her to a judgment in his or her favor. (*Fuentes*, 174 Ill. App. 3d at 866.) In the present case, plaintiff has failed to present a factual basis that would entitle him to relief under either a theory of retaliatory discharge or intentional interference with a contract of employment.

■ A valid claim for retaliatory discharge requires a showing that an employee has been: (1) discharged; (2) in retaliation for the employee's activities; and (3) that the discharge violates a clear mandate of public policy. *Hartlein v. Illinois Power Co.* (1992), 151 Ill. 2d 141, 160.

■ First, as to the loss of plaintiff's position as chief of service at the VAMC, the VAMC was never made a defendant in this action. Thus, it was incumbent upon plaintiff to prove the University was re-

sponsible for VAMC's decisions to discharge its employees. Plaintiff failed to present facts showing the University was responsible for or in any way authorized to discharge a VAMC employee. Because the record is devoid of any facts showing the University had the authority to discharge plaintiff as chief of service and staff physician at the VAMC, summary judgment was proper as to this claim.

Second, plaintiff failed to present facts showing that he was discharged from his employment at the University. Rather, the facts reveal plaintiff was demoted from his position as chairman of the department of radiology, not discharged. The University bylaws and the depositions of plaintiff, Dr. Almy, Hugh Doran and Leonard Rogers, as well as the correspondence between plaintiff and Drs. Falk and Winick, reveal that the position of chairman of the department of radiology was an administrative appointment filled by an existing employee of the University. Even assuming *arguendo* the removal of the plaintiff from his position as chairman was in retaliation for his actions regarding the false time cards, plaintiff is still a tenured professor at the University. In fact, plaintiff received a salary increase of $20,000 as promised by Dr. Winick and noted in plaintiff's letter of February 7, 1990.

Illinois courts do not recognize a cause of action for retaliatory demotion. (See *Ludwig v. C & A Wallcoverings, Inc.* (N.D. Ill. 1990), 750 F. Supp. 339 (where the district court found that Illinois courts follow a narrow interpretation of retaliatory discharge and have not yet recognized a cause of action for retaliatory demotion; thus, the district court would not extend State law to create a cause of action for retaliatory demotion).) Retaliatory discharge is considered a limited and narrow exception to the general rule of at-will employment. (See *Balla v. Gambro, Inc.* (1991), 145 Ill. 2d 492, 501.) Our supreme court has narrowly interpreted the cause of action of retaliatory discharge and does not strongly support its expansion. (*Melton v. Central Illinois Public Service Co.* (1991), 220 Ill. App. 3d 1052, 1055.) We decline to extend it further.

■ In addition, plaintiff failed to establish a factual basis to support his theory of intentional interference with his existing contract rights in employment at the University and the VAMC. To establish a valid claim of intentional interference with an existing contract right, a plaintiff must prove: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and

(5) damages. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.* (1989), 131 Ill. 2d 145, 154-55.

■ Plaintiff failed to establish any factual basis to support the existence of enforceable contract rights in his administrative positions as chairman of the department of radiology or as chief of service at the VAMC. The record reveals these positions were administrative in nature and that plaintiff served at the convenience of the University and the VAMC. Moreover, both parties to the at-will contract must be willing and desirous of continuing it in order for an action of tortious interference with contract to lie when the contract is at will. (*Cashman v. Shinn* (1982), 109 Ill. App. 3d 1112, 1118.) The record in this case discloses that both the University and the VAMC were desirous of terminating plaintiff's administrative positions. Although the facts surrounding plaintiff's "resignation" are in dispute, the University nonetheless accepted the resignation. The VAMC also accepted plaintiff's "resignation," and, in addition, the VAMC previously convened a search committee to search for plaintiff's replacement as early as 1988. Thus, we conclude the trial court did not err in granting defendant's motion for summary judgment.

■ Lastly, plaintiff contends the trial court erred in refusing to allow plaintiff to depose Drs. Winick and Falk before ruling on defendant's motion for summary judgment. Supreme Court Rule 191 provides that a party may submit an affidavit stating that certain material facts which ought to appear in an affidavit cannot be obtained without discovery. (134 Ill. 2d R. 191(b).) The statement must name the persons to whom such information is known and show why their affidavits cannot be procured. The rule further provides that the trial court may enter any order that is just, *i.e.*, granting or denying a motion to compel discovery. See 134 Ill. 2d R. 191(b).

■ Plaintiff did not comply with Rule 191. Plaintiff's affidavit stated that he believed Drs. Falk, Weil and Winick would testify that he did not resign from his position as chairman or as chief of service. Rule 191(b) requires facts, not conclusions (*Rush v. Simon & Mazian, Inc.* (1987), 159 Ill. App. 3d 1081, 1085), and plaintiff's statement regarding defendants' testimony is strictly conclusional.

Moreover, the record discloses that the parties agreed that the depositions of Drs. Winick and Falk would not be taken until after plaintiff's deposition was completed. Plaintiff postponed his deposition a number of times. Plaintiff also refused to answer certain questions during his deposition, causing it to be adjourned until the trial court granted defendants' motion to compel plaintiff to answer the questions. Thus, in light of the delays caused by plaintiff and his failure to

comply with Rule 191(b), the trial court acted properly in denying plaintiff's motion to compel discovery.

The law is clear that a defendant may move for summary judgment at any time as to all or any part of the relief sought against him or her. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(b).) Specifically, trial courts may entertain motions for summary judgment where the only evidence considered is plaintiff's own deposition testimony. (*Austin v. St. Joseph Hospital* (1989), 187 Ill. App. 3d 891, 896.) Thus, we conclude the trial court did not err in ruling on defendant's motion for summary judgment before permitting plaintiff to depose Drs. Winick and Falk.

Accordingly, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

BOWMAN and DOYLE, JJ., concur.