905 P.2d 559

**Tina MINTZ, a single woman, Plaintiff–Appellant,**

v.

**BELL ATLANTIC SYSTEMS LEASING INTERNATIONAL, INC., a foreign corporation, Robert Schoenlank and Jane Doe Schoenlank, husband and wife, Defendants–Appellees.**

**No. 1 CA–CV 93–0218.**

Court of Appeals of Arizona, Division 1, Department E.

July 18, 1995.

Review Denied Nov. 21, 1995.

Schleier & Engle, P.C. by Bradley H. Schleier, Tod F. Schleier, Phoenix, for plaintiff-appellant.

Fennemore Craig, P.C. by Polly S. Rapp, Loral L. Deatherage, Phoenix, for defendants-appellees.

## OPINION

NOYES, Judge.

After she failed to receive an expected promotion, Appellant Mintz suffered an emotional breakdown and later sued Appellee Bell Atlantic, her employer, and Appellee Schoenlank, her supervisor. The trial court

granted Appellees' motion to dismiss. We affirm because we conclude that 1) there is no tort claim for wrongful failure to promote, 2) the complaint does not state a claim for intentional infliction of emotional distress, and 3) a supervisor acting in the course and scope of employment does not tortiously interfere with a plaintiff's contract of employment when he fails to promote her.

## FACTS AND PROCEDURAL HISTORY

■ On appeal from a motion to dismiss, we consider the facts alleged in the complaint to be true, and we view them in a light most favorable to the plaintiff to determine whether the complaint states a valid claim for relief. *See Mack v. McDonnell Douglas Helicopter Co.,* 179 Ariz. 627, 628, 880 P.2d 1173, 1174 (App.1994).

In July 1987, Bell Atlantic hired Mintz as a computer equipment broker. In December 1989, Mintz complained to the Equal Employment Opportunity Commission ("EEOC") that Bell Atlantic was guilty of sex discrimination by failing to promote her and promoting a male instead. This complaint was resolved by Mintz and Bell Atlantic in 1990. In June 1991, Mintz once again did not receive an expected promotion (to a job involving duties she had been performing for several months). Mintz thought she was more qualified than the male hired by Schoenlank for the position. As a result of not being promoted, Mintz was hospitalized for severe emotional and psychological problems, and she began receiving short term disability benefits.

About three months later, Bell Atlantic stopped Mintz's disability benefits and directed her to return to work on September 11, although Bell Atlantic was aware that Mintz's physician had recommended that she not return to work until October 1. Mintz returned to work as ordered on September 11, but the stress put her back into the hospital the following day. On September 13, Bell Atlantic delivered a letter to Mintz in the hospital informing her that her job duties were being reassigned.

Mintz promptly filed a sex discrimination complaint with the Civil Rights Division of the Arizona Attorney General's Office ("ACRD"), and in June 1992, she filed this lawsuit in Superior Court. After ACRD issued a right-to-sue letter in July 1992, Mintz filed an amended complaint in Superior Court, naming Bell Atlantic in Counts 1 through 4 and Schoenlank in Count 5. The five counts are as follows:

Count 1: Public policy tort for wrongful failure to promote because of sex discrimination;

Count 2: Public policy tort for wrongful failure to promote in retaliation for filing the EEOC complaint;

Count 3: Sex discrimination (Arizona Civil Rights Act);

Count 4: Intentional infliction of emotional distress;

Count 5: Intentional interference with contractual relations.

In granting Appellees' motion to dismiss, the trial court concluded: 1) the public policy theory relied on in Counts 1 and 2 applied only in wrongful discharge cases; existing discrimination laws provided the remedy for wrongful failure-to-promote; 2) Bell Atlantic's alleged conduct was not so extreme and outrageous as to state a claim for intentional infliction of emotional distress; and 3) because Mintz alleged that Schoenlank acted in the course and scope of employment, he was acting as the company and could not interfere with his own contract when he failed to promote her.

After the trial court dismissed Counts 1, 2, 4, and 5, the parties stipulated to dismissal of Count 3, judgment was entered, and this timely appeal followed. We have jurisdiction pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") sections 12–120.21(A)(1) (1992) and 12–2101(B) (1994).

## ANALYSIS

### A. Public Policy Torts

■ Mintz argues that the trial court failed to follow the broad policy pronouncements of *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 710 P.2d 1025 (1985), in which the Arizona Supreme Court recognized a tort for wrongful discharge from

employment when the reason for the discharge violates public policy. Mintz, in effect, asks us to create the tort of wrongful failure-to-promote.

A similar request was presented in *Burris v. City of Phoenix,* 179 Ariz. 35, 875 P.2d 1340 (App.1993). In *Burris,* the plaintiff proposed that a tort action for wrongful failure-to-hire arose from a violation of public policy found in the Arizona Civil Rights Act ("ACRA"). *Id.* at 43, 875 P.2d at 1348. *Burris* rejected this theory, citing the lack of any state or federal authority recognizing the tort of wrongful failure-to-hire. *Id.* We follow *Burris,* as did another recent panel of this Court in *Bogue v. Better–Bilt Aluminum Co.,* 179 Ariz. 22, 33, 875 P.2d 1327, 1338 (App.1994).

Mintz argues that *Broomfield v. Lundell,* 159 Ariz. 349, 767 P.2d 697 (App.1988), supports her argument because that case, after finding that ACRA "clearly established a public policy against employment discrimination," held that ACRA "does not preempt a tort action for wrongful discharge." *Id.* at 357, 767 P.2d at 705. As noted by *Burris,* however, to hold that ACRA does not preempt a tort action is quite different from holding that it creates a tort action. *Burris,* 179 Ariz. at 43, 875 P.2d at 1348. ·

The tort of wrongful discharge was not created by ACRA, *see Bernstein v. Aetna Life and Casualty,* 843 F.2d 359, 365 (9th Cir.1988); it existed before *Wagenseller* and independently of ACRA. *See Fleming v. Pima County,* 141 Ariz. 149, 153–54, 685 P.2d 1301, 1305–06 (1984) (tort of wrongful discharge protects both at-will and non-at-will employees). The tort of wrongful failure-to-promote does·not presently exist, and nothing in ACRA, *Wagenseller* or *Broomfield* provides reason or authority for creating it.

We know of no court that recognizes the tort of wrongful failure-to-promote. *Zimmerman v. Buchheit of Sparta, Inc.,* 245 Ill.App.3d 679, 615 N.E.2d 791, 615 N.E.2d 791 (1993), recognized the tort of retaliatory demotion, but that case was reversed by the Illinois Supreme Court. *See Zimmerman v. Buchheit of Sparta, Inc.,* 164 Ill.2d 29, 206 Ill.Dec. 625, 645 N.E.2d 877 (1994); *see also Ludwig v. C & A Wallcoverings, Inc.,* 960

F.2d 40 (7th Cir.1992) (Illinois tort of wrongful discharge does not include retaliatory demotion); *Hindo v. University of Health Sciences/Chicago Medical Sch.,* 237 Ill.App.3d 453, 178 Ill.Dec. 207, 604 N.E.2d 463 (1992) (no cause of action for retaliatory demotion).

Mintz argues that *Broomfield* observed that ACRA's administrative and judicial remedies for employment discrimination may, at times, be inadequate. *Broomfield,* 159 Ariz. at 357, 767 P.2d at 705. That fact may be of assistance in deciding whether ACRA preempted the existing tort of wrongful discharge, but it is not of assistance in determining whether there is an existing tort action for wrongful failure-to-promote. We agree with the trial court that the tort of wrongful failure-to-promote does not exist and that any remedies for this conduct are therefore statutory. *See* A.R.S. §§ 41–1463(B) (Supp.1994), 41–1464(A) (1992), 41–1481 (Supp.1994).

As a policy reason for not creating the tort of wrongful failure-to-promote, we reiterate the concerns expressed in *Ludwig:*

> Recognizing a retaliation tort for actions short of termination could subject employers to torrents of unwarranted and vexatious suits filed by disgruntled employees at every juncture in the employment process. And why stop at demotions? If, as *Ludwig* argues, a demotion raises the same policy concerns as a termination, so too would transfers, alterations in job duties, and perhaps even disciplinary proceedings. The potential for expansion of this type of litigation is enormous.

960 F.2d at 43; *see also Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373, 401 (1988) ("The expansion of tort remedies in the employment context has potentially enormous consequences for the stability of the business community.").

**B. Intentional Infliction of Emotional Distress**

▆▆▆ The elements of this cause of action are:

> *[F]irst,* the conduct by the defendant must be "extreme" and "outrageous"; *second,* the defendant must either intend to cause

emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and *third,* severe emotional distress must indeed occur as a result of defendant's conduct.

*Ford v. Revlon, Inc.,* 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987) (emphasis in original) (citing RESTATEMENT (SECOND) OF TORTS § 46(1) (1965)). The trial court must determine whether the acts complained of are sufficiently extreme and outrageous to state a claim for relief. *Patton v. First Fed. Sav. & Loan Ass'n of Phoenix,* 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978). A plaintiff must show that the defendant's acts were "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Cluff v. Farmers Ins. Exchange,* 10 Ariz.App. 560, 562, 460 P.2d 666, 668 (1969) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d). Only when reasonable minds could differ in determining whether conduct is sufficiently extreme or outrageous does the issue go to the jury. *Lucchesi v. Stimmell,* 149 Ariz. 76, 79, 716 P.2d 1013, 1016 (1986).

The essence of Count 4 is its allegation that "the actions of Defendant Bell Atlantic in failing to promote Plaintiff, forcing her to return to work, and hand delivering a letter to her while in the hospital were extreme and outrageous and calculated to cause severe emotional distress to Plaintiff." We assume the allegations of the complaint to be true and will uphold the dismissal only if plaintiff is not entitled to relief under any facts susceptible of proof under the claims stated. *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 186, 677 P.2d 1292, 1294 (1984).

We readily agree with the trial court that Bell Atlantic's failure to promote Mintz does not "go beyond all possible bounds of decency," even if it was motivated by sex discrimination or retaliation. A closer question is presented by Bell Atlantic's "forcing her to return to work, and hand deliver-

ing a letter to her while in the hospital." But we again agree with the trial court that the allegations regarding Bell Atlantic's conduct do not state a claim for intentional infliction of emotional distress. As noted in *Cox v. Keystone Carbon Co.,* 861 F.2d 390 (3d Cir. 1988), *cert. denied,* 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990), "[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Id.* at 395.

Mintz properly argues that a relevant factor in determining outrageousness is defendant's knowledge that plaintiff is particularly susceptible to emotional distress. *See Lucchesi,* 149 Ariz. at 79, 716 P.2d at 1016 (citing RESTATEMENT (SECOND) OF TORTS § 46 cmt. f); *see also Brown v. Ellis,* 40 Conn.Supp. 165, 484 A.2d 944 (1984) (knowing that plaintiff feared heights, defendant assigned him work at heights); *LaBrier v. Anheuser Ford, Inc.,* 612 S.W.2d 790 (Mo.App.1981) (defendants knew of plaintiff's susceptibility to emotional problems).

Another relevant factor, however, is that Bell Atlantic had a legitimate business purpose in seeing that Mintz's work was done, either by her or by someone else. *See* RESTATEMENT (SECOND) OF TORTS § 46 cmt. g:

> The conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.

Because of its legitimate business purpose, the bare fact that Bell Atlantic called Mintz back to work sooner than her doctor recommended or that Bell Atlantic hand delivered a letter to Mintz in the hospital cannot be regarded as "atrocious and utterly intolerable in a civilized community," even in light of Mintz's known susceptibility to emotional problems.[1] The trial court has to draw a

---

1. The dissent compares delivery of this letter to "insistently and boisterously attempt[ing] to settle an insurance claim" in the hospital room of a patient with a heart condition, *infra* p. 16. We

see a significant difference between the two situations. The outrage in the cited example is not the settlement attempt, it is the insistent and boisterous manner in which that attempt was

line, and we find no error in where the line was drawn on the facts alleged here. *See Cluff,* 10 Ariz.App. at 562, 460 P.2d at 668 (trial court acts as society's conscience to determine whether alleged acts "can be considered as extreme and outrageous conduct in order to state a claim for relief").

The *Cox* case serves to illustrate just how outrageous alleged conduct must be to state a claim for intentional infliction of emotional distress in the employment context. The plaintiff in *Cox* suffered from severe coronary artery disease and took a three-month leave of absence to undergo triple bypass heart surgery. 861 F.2d at 391. On his first day back at work following surgery, Cox was discharged by the employer. *Id.* at .395. When Cox applied for long term disability and medical insurance benefits, the employer opposed his application. *Id.* at 391. In affirming the trial court's grant to the employer of a directed verdict on Cox's claim for intentional infliction of emotional distress, the Third Circuit explained that:

> In the instant case, examining Cox's claim in the light most favorable to him, [the employer] can only be said to have dismissed Cox with an improper motive and notwithstanding the potential effects on Cox.... Thus, although we agree with the district court that Cox's dismissal could have been handled with more empathy and finesse, we must nevertheless conclude that [the employer's] behavior was not so outrageous as to allow a reasonable jury to afford Cox relief on his intentional infliction of emotional distress claim.

*Id.* at 396.

Although we can certainly see the apparent callousness and insensitivity of delivering a job-reassignment letter to an employee in Mintz's condition, we conclude that the trial court did not err in ruling that the facts alleged by Mintz were not sufficiently extreme and outrageous to state a claim against her employer for intentional infliction of emotional distress.

## C. Intentional Interference with Contractual Relations

■ This claim is against Schoenlank alone for his failure to promote Mintz. The trial court dismissed this claim, concluding that because Mintz alleged that Schoenlank was acting in the course and scope of his employment when he failed to promote her, he *was* the company and could not interfere with his own contract. Mintz disagrees and relies on *Wagenseller* and *Bernstein,* each of which allowed an employee to prosecute an intentional interference with contractual relations claim against a supervisor who allegedly acted with improper motivation in causing the employee to be discharged.

To apply *Wagenseller* and *Bernstein* as argued by Mintz would create quite an anomaly: although having no claim against the company for the supervisor's failure to promote her, Mintz would have an intentional interference claim against the supervisor himself. To make sense here, it is necessary for us to distinguish *Wagenseller* and *Bernstein* on this point, which can be done: those cases are grounded in the existing tort of wrongful discharge, while Mintz's case is grounded in the non-existent tort of wrongful failure-to-promote.

We reiterate that Schoenlank's actions formed the basis of the "public policy" tort claims against Bell Atlantic. Having concluded that no cause of action is stated against Bell Atlantic in Counts 1 and 2 for Schoenlank's failure to promote Mintz, we must also conclude that no cause of action is stated against Schoenlank in Count 5 for that same conduct.

"[A] cause of action in tort is available to a party to any contract, at-will or otherwise, when a third party improperly and intentionally interferes with the performance of that contract." *Wagenseller,* 147 Ariz. at 387, 710 P.2d at 1042. There is no "third party" in this case. Mintz alleged in the amended complaint that "Defendant Schoenlank was at all times mentioned herein acting for and on behalf of Defendant Bell Atlantic, as an

made. The cited example would not state a claim for intentional infliction of emotional distress by merely alleging that the company "attempted to settle an insurance claim" in the

hospital, and Mintz does not state a claim by merely alleging that the company "hand deliver[ed] a [job-reassignment] letter to her while in the hospital."

agent and employee of Bell Atlantic, and in his official capacity." That being the case, there are only two parties in this case: Mintz and Bell Atlantic acting through Schoenlank. If Bell Atlantic cannot be liable in tort for Schoenlank's failure to promote Mintz, neither can Schoenlank.

Two Arizona cases are on point. *Payne v. Pennzoil Corp.*, 138 Ariz. 52, 672 P.2d 1322 (App.1983), affirmed dismissal of an intentional interference claim against supervisors who discharged Payne. The court concluded that the supervisors were acting for the company when they discharged Payne, and they therefore were the company and could not interfere with their own contract. 138 Ariz. at 57, 672 P.2d at 1327.

*Barrow v. Arizona Bd. of Regents*, 158 Ariz. 71, 761 P.2d 145 (App.1988), a post-*Wagenseller* case, followed *Payne* in affirming the dismissal of a professor's intentional interference claim against the university officials who caused his suspension. The court reasoned that because the officials were acting for the Board of Regents, they were the Board of Regents and could not interfere with their own contract. *Id.* at 78, 761 P.2d at 152.

We understand Mintz's argument that the *Payne–Barrow* rationale is of questionable validity in discharge cases because *Bernstein* found this rationale both "meritless" and specifically rejected by *Wagenseller.* See 843 F.2d at 367. *Bernstein* stated that the issue was not whether the agent was acting for the employer: "The issue that the *Wagenseller* court emphasized is whether the interfering party's action was 'improper.'" *Id.* We agree with this reading of *Wagenseller* and can reconcile it with our holding. Mintz alleged that Schoenlank was acting in the course and scope of his employment when he failed to promote her. Because Bell Atlantic cannot be liable in tort for Schoenlank's failure to promote Mintz, Schoenlank did nothing "improper" and cannot himself be liable in tort for intentional interference with Mintz's employment contract.

The judgment of dismissal is in all respects affirmed.

GARBARINO, J., concurs.

LANKFORD, Presiding Judge, dissenting in part.

I agree with the majority in all respects except one. In my view, the complaint sufficiently stated a claim for intentional infliction of emotional distress. I therefore dissent from this part of the opinion.

As alleged by the plaintiff, her employer forced her to return to work after she had been hospitalized for severe psychological problems. The employer knew at the time that plaintiff's physician had advised her against returning to work.

Plaintiff complied with the employer's demand and returned to work on September 11, 1991. The next day, she was hospitalized due to the emotional trauma. The following day, September 13, the employer hand-delivered a letter to plaintiff at the hospital, informing her that her job duties had been reassigned. Although the employer asserts on appeal that it was "obligated" to notify plaintiff of this fact, this is an appeal from a dismissal and we are thus reviewing the allegations of the complaint, not a factual record.

On review, we assume the allegations of the complaint are true and can uphold the dismissal only if the plaintiff is not entitled to any relief under the facts alleged. *McAlister v. Citibank,* 171 Ariz. 207, 211, 829 P.2d 1253 (App.1992). "Motions to dismiss for failure to state a claim are not favored under Arizona law," our supreme court has said. *State ex rel. Corbin v. Pickrell,* 136 Ariz. 589, 594, 667 P.2d 1304 (1983) (quoting case). Dismissal should not be granted "unless it appears *certain*" that plaintiff could not succeed. *Id.* (quoting case; emphasis added). This Court has expressed the same view in *Newman v. Maricopa County,* 167 Ariz. 501, 503, 808 P.2d 1253 (App.1991): "The motion should be denied unless 'it appears *beyond doubt* that the plaintiff can prove no set of facts which would entitle him to relief.'" (quoting 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 325 (1990) and *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)) (emphasis added).

Taking the allegations of the complaint as true, can we say that the defendant's conduct was sufficiently outrageous as to be tortious? [2] I believe we can. Defendant's conduct is much like kicking someone who is down. In this case, the plaintiff already had been traumatized by defendant's act of forcing her to return to work. Knowing of her psychological crisis and of her vulnerability, defendant nevertheless sent a letter that it must have known would further harm the plaintiff. In light of the background that defendant knew of plaintiff's vulnerability and had caused her rehospitalization by forcing her to return prematurely to work, delivering a letter bearing bad or threatening news within a day of her hospitalization can be considered outrageous conduct.[3]

In fact, it is difficult to imagine conduct more "atrocious and utterly intolerable in a civilized community" than to intentionally risk harm to a sick and hospitalized person. *See Patton*, 118 Ariz. at 476, 578 P.2d 152 (quoting case). Defendant's knowledge of the plaintiff's vulnerability makes the conduct outrageous. "The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know." RESTATEMENT (2D) OF TORTS § 46, cmt. f. *Accord, Lucchesi v. Stimmell,* 149 Ariz. 76, 79, 716 P.2d 1013 (1986). In fact, the Restatement provides an illustration similar to this case. The plaintiff is hospitalized with a heart condition and is under doctor's orders to rest. The defendant comes to the hospital and insistently and boisterously attempts to settle an insurance claim. The defendant is liable for the harm caused if he knew of the plaintiff's condition. RESTATEMENT, *supra* at illus. 12.

The majority criticizes the use of this illustration. The outrageousness of the illustration lies in the insistent and boisterous manner of the communication, the majority says, and there was none of that here.

This argument both misses the thrust of the Restatement and overlooks important aspects of defendant's conduct. First, illustration 12 accompanies Restatement Section 46, which states that otherwise non-tortious conduct can become outrageous and tortious if defendant knows of the plaintiff's vulnerability due to emotional distress or mental or physical condition. What makes the illustration pertinent, then, is the fact of the plaintiff's vulnerability, not that the communication was rough or ill-mannered.

Second, the majority's focus on the manner of delivery overlooks other aspects of defendant's conduct which heighten the outrage. The letter was sent for no apparent reason: We know of no need to inform plaintiff of action taken adverse to her while she lay hospitalized a mere day after her crisis began. Moreover, unlike the attempt to settle a claim in the illustration, the communication here was adverse, threatening and frightening. All that we know of the letter suggests that it was likely to be perceived as a threat to plaintiff's job security, and that defendant knew it would be interpreted as such.

In addition, the fact that defendant behaved so badly to one of its employees is a fact which contributes to the outrageousness. That plaintiff was the employee of defendant makes the conduct more outrageous: "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." RESTATEMENT, *supra* at cmt. 3(e). *See also Lucchesi v. Stimmell,* 149 Ariz. at 79, 716

---

**2.** *See Patton v. First Fed. Sav. & Loan Ass'n,* 118 Ariz. 473, 476, 578 P.2d 152 (1978) ("It is the duty of the court as society's conscience to determine whether the acts complained of can be considered sufficiently extreme and outrageous to state a claim for relief.").

**3.** Although we do not know the exact contents of the letter or the details of the manner of its delivery, this lack of factual detail is to be expected because this case was resolved on a motion to dismiss the complaint for failure to state a claim. Indeed, the absence of such evidentiary details merely illustrates why deciding on a motion to dismiss ends the case prematurely.

P.2d 1013 (position occupied by defendant is a factor).

The employer relies on *Burger v. Health Ins. Plan of Greater New York*, 684 F.Supp. 46 (S.D.N.Y.1988) for its argument that its conduct was not outrageous. In *Burger*, the employee alleged that the employer's harassment and discrimination necessitated sick leave. Two months after the sick leave began, the employer sent a letter asking for clarification of the employee's return date, noting that if no clarification were received the employee could be terminated for lack of availability, but also stating that the employee could be rehired even if terminated if she subsequently became available for work.

*Burger* is distinguishable for several reasons. First, the employee was not hospitalized at the time, as plaintiff was here. Second, the letter apparently was mailed, not hand-delivered to the plaintiff's hospital bed as in this case. Third, the letter was delivered two months after sick leave began, not the day after a psychological crisis, as here. Fourth, the contents of the letter are different. The letter in *Burger* was primarily a request for information, with the threat of possible termination tempered by the possibility of rehiring. The letter here conveyed information rather than requested it, and the information was wholly threatening in stating that plaintiff's job duties were being reassigned.

The employer also argues that its conduct was privileged. It is indeed privileged conduct to insist upon one's legal rights "in a permissible way." RESTATEMENT, *supra* at cmt. g. However, this does not justify the employer's conduct. While it may have been permissible to reassign a worker's duties, this does not immunize the employer's act of hand-delivering a letter to the hospital notifying plaintiff of that fact, knowing that plaintiff was in psychological crisis and vulnerable to emotional harm. *Crump v. P & C Food Markets, Inc.*, 154 Vt. 284, 576 A.2d 441, 448 (1990) commented on an analogous argument:

> We agree with defendant that the mere termination of employment will not support a claim for intentional infliction of emotional distress. However, if the man-

ner of termination evinces circumstances of oppressive conduct and abuse of a position of authority vis-a-vis plaintiff, it may provide grounds for the tort action.

In this case, the question is whether the complaint pleads a claim which is sufficient to go to a jury. I believe it does. Therefore, I must respectfully dissent.