OPINION & ORDER
 

 EDELSTEIN, District Judge:
 

 Currently before the Court are six motions pursuant to Federal Rule of Civil Procedure (“Rule”) 12(b) to dismiss plaintiffs’ Amended Complaint. These motions are brought respectively by defendants the United States of America (“the Government”), Charles M. Carberry as Investigations Officer (“Carberry”), Frederick B. Lacey as Independent Administrator (“Lacey”), the International Brotherhood of Teamsters (“IBT”), IBT Local 738 (“Local 738”), and IBT Local 726 (“Local 726”).
 
 [1]
 
 Defendant IBT Local 727 Health and Welfare Fund has made no response to plaintiffs’ Amended Complaint and does not join in any of the instant motions to dismiss. For the reasons discussed below, each of these motions is granted, and plain
 
 *1049
 
 tiffs’ Amended Complaint is dismissed in its entirety.
 

 BACKGROUND
 

 This opinion emanates from the voluntary settlement of an action commenced by the Government against the IBT and the IBT’s General Executive Board. This settlement was embodied in the voluntary consent order entered March 14, 1989 (“the Consent Decree”). The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through a two-phased implementation of the Consent Decree’s various remedial provisions. In the first phase of the Consent Decree, these provisions provided for three court-appointed officers: the Independent Administrator to oversee the Consent Decree’s provisions, the Investigations Officer to bring charges against corrupt IBT members, and the Election Officer to supervise the electoral process that led up to and included the 1991 election for International Union Office. In the second phase of the Consent Decree, the Independent Administrator was replaced by a three-member Independent Review Board (“the IRB”).
 

 During its more than seven-year history, the Consent Decree has spawned a tremendous amount of litigation that has required this Court to issue numerous opinions. In one of those opinions, pursuant to this Court’s authority under the All Writs Act, 28 U.S.C. § 1651(a), this Court enjoined “all local unions, joint councils, area conferences, and other entities subordinate to or affiliated with the IBT, and any members, officers, representatives, agents and employees of the IBT or any such IBT affiliated entity, from filing or taking any legal action that challenges, impedes, seeks review of or relief from, or seeks to prevent or delay any act of any of the court officers appointed by this Court pursuant to the Consent Order in this action, in any court or forum in any jurisdiction except this Court[.]” December 15, 1989, Order at 8;
 
 see also
 
 January 17, 1990, Opinion
 
 &
 
 Order, 728 F.Supp. 1032 (S.D.N.Y.) (“All Writs Act Decision”),
 
 modification denied,
 
 735 F.Supp. 502 (S.D.N.Y.),
 
 affd,
 
 907 F.2d 277 (2d. Cir.1990).
 

 Although the instant action originally was filed in the United States District Court for the Northern District of Illinois, Eastern Division, the Government applied to this Court for an order enjoining plaintiffs from pursuing the instant case in any forum other than this Court. Citing this Court’s All Writs Act Decision, the Government argued that “[o]n the face of the complaint, it is plain that the
 
 Erbacci
 
 action directly implicates the [Consent Decree].” (Memorandum of Law in Support of Government’s Motion for Injunctive Relief at 1.) This Court granted the Government’s application, finding “that plaintiffs must be enjoined from pursuing the
 
 Erbacci
 
 litigation in any court or forum other than this Court because the
 
 Erbacci
 
 litigation falls squarely within the four corners of this Court’s All Writs Act Decision.” January 19, 1996, Opinion & Order, 911 F.Supp. 743, 748 (S.D.N.Y.1996).
 

 Plaintiffs are two individuals, one law firm, and one insurance company that provided legal representation and insurance services to Local 738, Local 726, and Local 727’s Health and Welfare Fund.
 
 (Erbacci et al. v. United States, et. al.,
 
 96 Civ. 1664, Amended Complaint (“Amended Complaint”) ¶¶ 1-3.) Plaintiff Anthony G. Erbacci (“Erbacci”) “is a citizen of the State of Illinois [and] is licensed to practice law in the State of Illinois.”
 
 Id.
 
 ¶ 2. Plaintiff Jack P. Cerone (“Cerone”) is a citizen of Illinois and is an attorney licensed to practice in Illinois.
 
 Id.
 
 ¶ 3. Cerone also “is the sole proprietor of and does business as Marble Insurance Agency.”
 
 Id.
 
 Plaintiff Erbacci, Cerone, and Moriarty, Ltd. is a law firm that is the successor-in-interest to Erbacci, Syracuse & Cerone, Ltd, which was a law firm — apparently organized as a limited partnership — in which both Erbacci and Cerone were shareholders.
 
 Id.
 
 ¶¶ 1-3. Plaintiff Marble Insurance Agency is the insurance agency owned and operated by plaintiff Cerone.
 
 Id.
 
 ¶ 3. Defendants are: (1) the Government; (2) the IBT; (3) Carberry in his capacity as Investigations Officer; (4) Lacey in his capacity as Independent Administrator;
 
 [2]
 
 (5) IBT Local 738; (6) IBT Local 726;
 
 *1050
 
 and (7) IBT Local 727 Health and Welfare Fund.
 
 Id.
 
 ¶¶ 4-10.
 

 Plaintiffs contend that they previously provided legal and insurance services to Local 738, Local 726, and Local 727’s Health and Welfare Fund. Plaintiffs assert that they provided legal services to Local 738, “including organizing efforts and day-to-day business.”
 
 Id.
 
 ¶ 16. Plaintiffs claim that they also provided legal services to Local 726, including “negotiations with several municipalities.”
 
 Id.
 
 ¶ 17. Plaintiffs assert that Cerone sold insurance to Local 727’s Health and Welfare Fund.
 
 Id.
 
 ¶ 20.
 

 Plaintiffs contend that defendants improperly interfered with plaintiffs’ business relationships with Local 738, Local 726, and Local 727’s Health and Welfare Fund. Plaintiffs assert that defendants informed Local 738, Local 726, and Local 727’s Health and Welfare Fund that plaintiffs had ties with organized crime.
 
 Id.
 
 ¶¶31-40. Plaintiffs state that in January 1986, Cerone’s father “was convicted of conspiracy to promote racketeering enterprise [sic], and interstate fraud or communication in aid of racketeering, and has been identified as a member of La Cosa Nostra.”
 
 Id.
 
 ¶ 23. Plaintiffs claim that Carberry “initiated an investigation regarding plaintiff Jack P. Cerone and informed Defendant [IBT] Local 738 and others regarding this investigation.”
 
 Id.
 
 ¶31. Plaintiffs assert that the IBT wrote to Local 738, stating that Cerone was associated with organized crime.
 
 Id.
 
 ¶ 33. Plaintiffs further contend that FBI Supervisory Special Agent Duncan J. Wainwright wrote a letter to the IBT, stating that the IBT’s “contacts with Jack P. Cerone violated the Consent Decree.”
 
 Id.
 
 ¶ 36. Plaintiffs state that on June 30, 1993, Local 738 wrote a letter to plaintiffs, terminating their services “due to the ‘unresolved allegations concerning plaintiff Jack P. Cerone.”
 
 Id.
 
 ¶ 38. Plaintiffs assert that “in or about July, 1993 [IBT] Local 726 severed its attorney-client relationship with Plaintiffs ... due to the allegations against Plaintiff Jack P. Cerone.”
 
 Id.
 
 ¶40. Likewise, plaintiffs claim that on July 1, 1993, “Local 727, Health and Welfare Fund sent a letter to plaintiff Marble Insurance Agency severing the insurance business relationship between Plaintiff Marble Insurance Agency and Defendant ... Local 727, Health and Welfare Fund.”
 
 Id.
 
 ¶ 39.
 

 Plaintiffs claim that defendants improperly failed to provide plaintiffs with “the opportunity to respond [to] or answer the allegations” and that defendants improperly failed to provide plaintiffs with a hearing.
 
 Id.
 
 ¶ 41. In “Count I” of their Amended Complaint, plaintiffs allege that defendants both violated plaintiffs’ constitutional rights and improperly interfered with plaintiffs’ contractual relationships. Plaintiffs allege that defendants’ actions violated plaintiffs’ rights to free association, guaranteed by the First Amendment to the United States Constitution.
 
 Id.
 
 ¶¶ 42-45. Plaintiffs further allege that defendants’ actions violated plaintiffs’ rights to substantive and procedural due process and their
 
 *1051
 
 rights to confront their accusers, as guaranteed, respectively, by the Fifth and Sixth Amendments to the United States Constitution.
 
 Id.
 
 ¶¶ 46-47. Plaintiffs also claim that the Consent Decree does not apply to plaintiffs.
 
 Id.
 
 ¶ 49. In addition, plaintiffs assert that the Government, the IBT, Carberry, and Lacey “impermissible and tortiously interfered with Plaintiffs’ contract, business relationships and prospective relationships.”
 
 Id.
 
 ¶ 55. As a remedy for these alleged wrongs, plaintiffs seek an injunction:
 

 A. Temporarily and permanently enjoining Defendants from interfering with and violating Plaintiffs’ First Amendment rights of freedom of association;
 

 B. Temporarily and permanently enjoining Defendants from interfering with and violating Plaintiffs’ Fifth Amendment rights to due process;
 

 C. Temporarily and permanently enjoining Defendants from interfering with and violating Plaintiffs’ Sixth Amendment rights to confront their accusers;
 

 D. Temporarily and permanently enjoining Defendants from interfering with and violating Plaintiffs’ contracts, business relationships and prospective relationships;
 

 E. Temporarily and permanently enjoining Defendants from applying the terms of Consent Decree to Plaintiffs; and
 

 F. For such other relief as this Court deems equitable and just.
 

 Id.
 
 at 18.
 

 In “Count II” of their Amended Complaint, plaintiffs reiterate the alleged constitutional violations discussed in “Count I.”
 
 Id.
 
 at 18.
 
 [3]
 
 As a remedy for these alleged constitutional violations, plaintiffs seek $249,-750 in damages.
 
 Id.
 
 at 21.
 

 In “Count III” of their Amended Complaint, plaintiffs again reiterate the alleged constitutional violations discussed in “Count I.”
 
 Id.
 
 at 21. As a remedy for these alleged violations, plaintiffs seek a declaratory judgment that: (1) defendants violated plaintiffs’ First Amendment rights; (2) defendants violated plaintiffs’ Fifth Amendment rights; (3) defendants violated plaintiffs’ Sixth Amendment rights; (4) it is unconstitutional to apply the Consent Decree to non-members of the IBT; (5) the Consent Decree cannot be enforced against non-members of the IBT; (6) “the United States of America cannot use the terms of the Consent Decree to control the actions of [the IBT] and its Local as they relate to [non-members of the IBT]”; and (7) the Government, the IBT, Carberry, and Lacey tortiously interfered with plaintiffs’ “contracts, business relationships and prospective relationships.”
 
 Id.
 
 at 25-26.
 

 The Government, Carberry, Lacey, and the IBT Defendants respectively filed Rule 12(b) motions to dismiss plaintiffs’ Amended Complaint. Pursuant to Rule 12(b)(6), the Government moves to dismiss the portions of plaintiffs’ Amended Complaint that claim that the Government violated plaintiffs’ constitutional rights. (Memorandum of Law in Support of the Government’s Motion To Dismiss the Amended Complaint (“Govt.Memo”) at 7-12 (March 29, 1996).) The Government argues that “[t]he United States is not liable for the actions of Carberry as Investigations Officer” because the Second Circuit has established that “the officers appointed pursuant to the Consent Decree are not state actors.”
 
 Id.
 
 at 11-12 (citations omitted). Moreover, the Government argues that plaintiffs’ constitutional claims are meritless because: (1) plaintiffs suffered no First Amendment violation because Local 738, Local 726, and Local 727’s Health and Welfare Fund had an absolute right to terminate plaintiffs’ employment at any time with or without cause,
 
 id.
 
 at 7-8; (2) plaintiffs suffered no First Amendment violation because “an individual’s right to freedom of association may be curtailed to further significant governmental interests,” and the “public has a compelling interest in eliminating the public evils of crime, corruption, and racketeering in union activity,”
 
 id.
 
 at 9 (internal quotations omitted); (3) plaintiffs suffered no Fifth Amendment violation because plaintiffs have no property interest in their continued employment with Local 738, Local 726, or Local
 
 *1052
 
 727’s Health and Welfare Fund,
 
 id.
 
 at 9-11; and (4) plaintiffs suffered no Sixth Amendment violation because the Sixth Amendment only protects defendants in a criminal proceeding, and plaintiffs were not defendants in a criminal proceeding.
 
 Id.
 
 at 11. In addition, pursuant to Federal Rule of Civil Procedure 12(b)(1), the Government moves to dismiss plaintiffs’ tortious-interference-withcontract claim on the ground that this Court lacks jurisdiction to hear this claim because the Government has not waived sovereign immunity for such suits.
 
 Id.
 
 at 13.
 

 Pursuant to Rule 12(b)(6), defendant Car-berry moves to dismiss plaintiffs’ Amended Complaint. (Memorandum in Support of Investigations Officer’s Motion To Dismiss (“Carberry Memo”) (March 28, 1996).) Like the Government, Carberry argues that plaintiffs’ constitutional claims should be dismissed because Carberry is not a state actor.
 
 Id.
 
 at 7-9. Carberry further asserts that plaintiffs’ tortious-interference-with-eontract elaim is meritless because “plaintiffs have not alleged, nor could they allege, that [Carberry] engaged in any wrongful conduct.”
 
 Id.
 
 at 9. Carberry claims that each of plaintiffs’ business relations at issue in the instant dispute was terminable at will and that, to sustain a claim for tortious interference with employment terminable at will, plaintiffs must show that Carberry’s conduct was wrongful.
 
 Id.
 
 at 10. Carberry argues that plaintiffs acknowledge that Carberry acted in the instant case pursuant to authority granted to him by the Consent Decree, and therefore, Carberry’s conduct was not wrongful.
 
 Id.
 
 at 9.
 

 Defendant Lacey also moves this Court to dismiss plaintiffs’ Amended Complaint pursuant to Rule 12(b)(6). In support of this motion, Lacey submitted a memorandum of law to this Court, stating “[t]o avoid burdening the Court with needless repetition, the Independent Administrator hereby adopts the legal Argument set forth in the Carberry Memorandum.” (Lacey Memo at 3.)
 

 The IBT Defendants also bring a Rule 12(b)(6) motion to dismiss plaintiffs’ Amended Complaint. (Memorandum in Support of Motion of the IBT Defendants To Dismiss the Complaint (“IBT Memo”) (March 28, 1996).) Like the other defendants, the IBT Defendants claim that plaintiffs’ constitutional claims should be dismissed because officers acting pursuant to the Consent Decree are not state actors.
 
 Id.
 
 at 8-9. Moreover, the IBT Defendants claim that each of plaintiffs’ constitutional claims is meritless. The IBT Defendants assert that plaintiffs’ First Amendment claim “alleges the improper discharge of attorneys, which is not actionable.”
 
 Id.
 
 at 9. These defendants further assert that plaintiffs’ Fifth Amendment claim is meritless because plaintiffs had no property right in continued employment,
 
 id.
 
 at 10-11, and plaintiffs’ Sixth Amendment claim is meritless because the Sixth Amendment only protects a defendant in a criminal proceeding.
 
 Id.
 
 at 12.
 

 Although plaintiffs sought an extension of time to respond to defendants’ respective motions to dismiss, plaintiffs have failed to file any papers in response to these motions. Pursuant to Rule 6(b), plaintiffs sought an extension of time, arguing that this Court should set a single return date for all of the instant motions. Defendants had not set the same return date for these motions: Carberry and Lacey set a return date of April 15, 1996; the Government set a return date of April 18,1996; and the IBT Defendants set a return date of May 1,1996. Plaintiffs sought to set a single return date for these motions and to extend their time to answer each of these motions until May 8, 1996. In an Opinion and Order dated April 10, 1996, this Court denied plaintiffs’ Rule 6(b) motion because an attorney who was not admitted to practice in the Southern District of New York brought that motion, and thus, the motion was not properly before the Court. April 10, 1996, Opinion & Order, 923 F.Supp. 482 (S.D.N.Y.1996). Although by April 10, 1996, plaintiffs’ deadline for filing a response to Carberry’s and Lacey’s respective motions to dismiss had passed, plaintiffs could have filed a timely response to the Government’s and the IBT Defendants’ respective motions. Instead of filing such a response, however, plaintiffs sought reconsideration of this Court’s April 10, 1996, Opinion and Order and moved for an extension of time pursuant to Rule 6(b)(2). In an Opinion and Order
 
 *1053
 
 dated April 22,1996, this Court denied plaintiffs’ motions, both because these motions were meritless and because these motions violated the Federal Rules of Civil Procedure, the United States District Courts for the Southern and Eastern Districts of New York Joint Rules for General, Civil, Criminal, Admiralty and Magistrate Judge Proceedings, and this Court’s Individual Rules. April 22, 1996, Opinion & Order, 166 F.R.D. 298 (S.D.N.Y.1996). Even after this Court filed its April 22, 1996, Opinion and Order, plaintiffs still had an opportunity to file a timely response to the IBT Defendants’ motion to dismiss. Yet, plaintiffs filed no papers.
 

 DISCUSSION
 

 In reviewing the pleadings on a motion to dismiss for failure to state a claim, a court looks to the four corners of the complaint and evaluates the legal feasibility of the allegations contained therein.
 
 See
 
 Fed.R.Civ.P. 12(b)(6);
 
 see also Cortec Indus., Inc. v. Sum Holding L.P.,
 
 949 F.2d 42, 47 (2d Cir.1991),
 
 cert. denied,
 
 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992);
 
 Kramer v. Time Warner, Inc.,
 
 937 F.2d 767, 773 (2d Cir.1991);
 
 Ryder Energy Dist. Corp. v. Merrill Lynch Commodities, Inc.,
 
 748 F.2d 774, 779 (2d Cir.1984). As the Second Circuit has stated, the court’s function “is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.”
 
 Geisler v. Petrocelli,
 
 616 F.2d 636, 639 (2d Cir. 1980);
 
 see Ricciuti v. N.Y.C. Transit Auth.,
 
 941 F.2d 119, 124 (2d Cir.1991). “The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.”
 
 Scheuer v. Rhodes,
 
 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).
 

 In evaluating whether a complaint will withstand a Rule 12(b)(6) motion, a court must assume the truth of plaintiff’s well-pleaded factual allegations.
 
 See Papasan v. Allain,
 
 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986);
 
 LaBounty v. Adler,
 
 933 F.2d 121, 123 (2d Cir.1991). In addition, the Court will read the complaint generously, and draw reasonable inferences in favor of the pleader.
 
 See LaBounty,
 
 933 F.2d at 123 (allegations in complaint should be construed favorably to pleader). A complaint will not be dismissed unless it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to the relief requested.
 
 See Conley v. Gibson,
 
 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957);
 
 see also Hishon v. King & Spalding,
 
 467 U.S. 69, 73, 104 S.Ct. 2229, 2232-33, 81 L.Ed.2d 59 (1984) (complaint should be dismissed only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations);
 
 Branum v. Clark,
 
 927 F.2d 698, 705 (2d Cir.1991) (same).
 

 With this standard in clear view, each of defendants’ arguments will be examined in turn.
 

 1. Plaintiffs’ Constitutional Claims Are Meritless Because Officers Appointed Pursuant to the Consent Decree Are Not State Actors
 

 As each of the movants correctly has argued, plaintiffs’ constitutional claims are meritless because it is well settled that officers appointed pursuant to the Consent Decree are not state actors. It is a basic principal of constitutional law that “most rights secured by the Constitution are protected only against infringement by governments.”
 
 Flagg Brothers, Inc. v. Brooks,
 
 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). As the Supreme Court explained,
 

 [e]areful adherence to the “state action” requirement preserves an area of individual freedom by limiting the reach of federal law and federal power. It also avoids imposing on the [Government] responsibility for conduct for which they cannot fairly be blamed. A major consequence is to require the courts to respect the limits óf their own power____ Whether this is good policy or bad policy, it is a fundamental fact of our political order.
 

 Lugar v. Edmondson Oil Co.,
 
 457 U.S. 922, 936-37, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982).
 

 A litigant claiming that his constitutional rights have been violated must first
 
 *1054
 
 establish that the challenged conduct constitutes “state action.”
 
 Blum v. Yaretsky,
 
 457 U.S. 991, 1002, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982);
 
 United States v. International Bhd. of Teamsters, et al. [Senese and Talerico],
 
 941 F.2d 1292, 1295 (2d Cir. 1991). “To qualify as state action the conduct in question ‘must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,’ and ‘the party charged with the [conduct] must be a person who may fairly be said to be a state actor.”
 
 Id.
 
 at 1296 (quoting
 
 Lugar,
 
 457 U.S. at 937, 102 S.Ct. at 2753-54);
 
 United States v. International Bhd. of Teamsters, et al.,
 
 870 F.Supp. 557, 560 (S.D.N.Y.1994).
 

 Both this Court and the Second Circuit repeatedly have held that officers appointed pursuant to the Consent Decree are not state actors, and thus, the actions of these officers do not implicate the United States Constitution.
 
 See United States v. International Bhd. of Teamsters, et al. [Sansone],
 
 981 F.2d 1362, 1371 (2d Cir.1992) (actions of Independent Administrator do not constitute state action);
 
 United States v. International Bhd. of Teamsters, et al. [Star Market],
 
 954 F.2d 801, 806-07 (2d Cir.) (Independent Administrator and 1991 IBT Election Officer not state actors),
 
 cert. denied,
 
 505 U.S. 1205, 112 S.Ct. 2993, 120 L.Edüd 870 (1992);
 
 Senese and Talerico,
 
 941 F.2d at 1297 (2d Cir.1991) (Independent Administrator not a state actor);
 
 United States v. International Bhd. of Teamsters, et al,
 
 931 F.Supp. 1074, 1107-09 (S.D.N.Y.1996) (holding that the IRB is not a state actor);
 
 United States v. International Bhd. of Teamsters, et al.,
 
 896 F.Supp. 1349, 1363 (S.D.N.Y.1995) (1996 IBT Election Officer is not a state actor),
 
 affd as modified,
 
 86 F.3d 271 (2d Cir.1996); 870 F.Supp. at 560 (“the IRB is not a state actor”). In the instant case, plaintiffs erroneously have asserted that Carberry “is the agent of the Defendant United States, acting as the Investigations Officer of [the IBT] ... pursuant to the Consent Decree,” (Amended Complaint ¶6), and that Lacey “is the agent of the Defendant United States acting as the Independent Administrator of [the IBT] ... pursuant to the Consent Decree.” (Amended Complaint ¶7.) As the previously cited case law demonstrates, neither Carberry nor Lacey is an agent of the United States. Accordingly, any action that either Carberry or Lacey takes pursuant to authority granted by the Consent Decree does not implicate that United States Constitution. In light of the well-settled rule that officers acting pursuant to1 authority granted to them by the Consent Decree are not state actors, plaintiffs’ constitutional claims are not only merit-less, they are frivolous.
 

 2. Plaintiffs’ Constitutional Claims Are Meritless
 

 The instant motions to dismiss should also be granted because each of plaintiffs’ three constitutional claims is meritless. First, plaintiffs claim that defendants violated plaintiffs’ rights of association as guaranteed by the First Amendment to the United States Constitution. Plaintiffs argue that their “Right of Freedom of Association ... was violated in that Plaintiffs’ business relationships with” Local 738, Local 726, and Local 727’s Health and Welfare Fund “were severed due to the familial relationship between Plaintiff, Jack P. Cerone and John Phillip Cerone.” (Amended Complaint ¶ 48(A).) Plaintiffs also claim that their rights to freedom of association were violated because their business relationships with Local 738, Local 726, and Local 727’s Health and Welfare Fund “were severed due to Plaintiff Jack P. Cerone’s nationality” and “were severed due to the identity of Plaintiffs’ legal and insurance clients.”
 
 Id.
 
 ¶¶ 48(B)-(C).
 

 Plaintiffs’ First Amendment claims are meritless because Local 738, Local 726, and Local 727’s Health and Welfare Fund had an absolute right to terminate plaintiffs’ employment at any time with or without cause. Illinois law governs plaintiffs’ business relationships with Local 738, Local 726, and Local 727’s Health and Welfare Fund because: plaintiffs are all Illinois citizens; Local 738, Local 726, and Local 727’s Health and Welfare Fund are located in Illinois; and plaintiffs transacted business with these three defendants in Illinois. Under Illinois law, “a chent may discharge his attorney at
 
 *1055
 
 any time, with or without cause.”
 
 Balla v. Gambro, Inc.,
 
 145 Ill.2d 492,164 Ill.Dec. 892, 897, 584 N.E.2d 104, 109 (1991) (citation omitted);
 
 see also Herbster v. North American Life & Health Ins.,
 
 150 Ill.App.3d 21,103 Ill.Dec. 322, 326, 501 N.E.2d 343, 347 (1986),
 
 cert. denied,
 
 484 U.S. 850, 108 S.Ct. 150, 98 L.Ed.2d 105 (1987). In
 
 Balia,
 
 the Supreme Court of Illinois stated that “this rule recognizes that the relationship between an attorney and client is based on trust and that the client must have confidence in his attorney in order to ensure that the relationship will function properly.”
 
 Balia,
 
 164 Ill.Dec. at 897, 584 N.E.2d at 109 (internal quotation and citations omitted);
 
 see also Herbster,
 
 103 Ill.Dec. at 326, 501 N.E.2d at 347 (the right of a client to terminate the attorney-client relationship “is deemed necessary because of the deeply embedded concept of the confidential nature of the relationship between the attorney and the client and the evil that would obviously be engendered by any friction or distrust”) (citations omitted).
 

 In the instant case, none of plaintiffs’ First Amendment rights was violated when Local 738 and Local 726 terminated their respective attorney-client relationships with plaintiffs. Under Illinois law, Local 738 and Local 726 had an absolute right to terminate their attorney-client relationships with plaintiffs. Even taking as true plaintiffs’ claim that these Locals chose to dismiss plaintiffs after the Locals were informed that Cerone had associated with members of organized crime, such a claim does not curtail Local 738’s and Local 726’s respective rights to dismiss counsel. Because plaintiffs have no constitutional right to represent clients that do not want their services, plaintiffs can prove no set of facts that would demonstrate that any of the defendants violated plaintiffs’ rights to freedom of association.
 

 Similarly, plaintiffs’ claim that their First Amendment rights were violated when Local 727’s Health and Welfare Fund chose to cease purchasing insurance from plaintiffs is meritless. As the Government correctly argues, “[e]ven assuming that one has a constitutional right to sell insurance, ... one clearly does not have a constitutional right to sell insurance to a client who does not want to purchase it.” (Govt.Memo at 8.)
 

 Moreover, even if this Court were to assume
 
 arguendo
 
 that plaintiffs had some First Amendment right to act as attorneys and insurance brokers to Local 738, Local 726, and Local 727’s Health and Welfare Fund, “it is well established that an individual’s right to freedom of association may be curtailed to further significant governmental interests.”
 
 Senese and Talerico,
 
 941 F.2d at 1297 (citations omitted). During the course of the Consent Decree litigation, the Second Circuit has found that the “public has a compelling interest in eliminating the public evils of crime, corruption, and racketeering in union activity.”
 
 Id.
 
 (internal quotations omitted). In the instant case, even if plaintiffs could conjure some First Amendment right to act as counsel or to sell insurance, the public’s compelling interest in ridding the IBT of crime, corruption, and racketeering would warrant curtailing such a right. Accordingly, plaintiffs’ First Amendment Claim is meritless.
 

 Plaintiffs also claim that defendants violated plaintiffs’ Fifth Amendment rights to substantive and procedural due process. Plaintiffs claim that defendants violated these rights because plaintiffs received no hearing before plaintiffs were terminated from their employment. Plaintiffs assert that they had “valid and enforceable contracts” with Local 738, Local 726, and Local 727’s Health and Welfare Fund. (Amended Complaint ¶ 51.)
 

 Plaintiffs’ Fifth Amendment claim depends upon plaintiffs’ ability to demonstrate that they had a property interest in their employment. In
 
 Cleveland Board of Education v. Loudermill,
 
 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985), the Supreme Court stated that an employee’s claim that his termination violates his due process rights guaranteed by the Fifth Amendment “depends on [his] having had a property right in continued employment.” The Court further stated that “[property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings
 
 *1056
 
 that stem from an independent source such as state law.”
 
 Id.
 
 (internal quotation omitted). Under Illinois law, an employee has no property interest in an at-will employment position.
 
 See Kolman v. Sheahan,
 
 31 F.3d 429 (7th Cir.1994);
 
 Upadhya v. Langenberg,
 
 834 F.2d 661 (7th Cir.1987),
 
 cert. denied,
 
 486 U.S. 1033, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1988). Moreover, as previously discussed, under Illinois law a client has an absolute right to terminate an attorney-client relationship at any time with or without cause.
 
 See Balla,
 
 164 Ill.Dec. at 897, 584 N.E.2d at 109;
 
 Herbster,
 
 103 Ill.Dec. at 326, 501 N.E.2d at 347.
 

 In the instant case, plaintiffs’ claim is meritless because plaintiffs cannot show that they had any property right to act as attorneys for Local 738 or Local 726, or as insurance brokers to Local 727’s Health and Welfare Fund. While plaintiffs claim that they had “valid and enforceable contracts” with Local 738, Local 726, and Local 727’s Health and Welfare Fund, these “contracts” were nothing more than at-will employment. Plaintiffs have not provided the Court with any documentation that might indicate that plaintiffs had guaranteed employment as counsel to Local 738 or Local 726. Plaintiffs’ failure to provide such documentation is hardly surprising, however, because under well-settled Illinois law, plaintiffs’ employment as attorneys for these Locals was an at-will employment. Plaintiffs also make no claim that Local 727’s Health and Welfare Fund was in any way obligated to purchase insurance from plaintiffs. Plaintiffs merely claim that “Jack P. Cerone as an insurance broker and doing business as Marble Insurance Agency, has sold insurance to ... [Local 727’s] Health & Welfare Fund.” (Amended Complaint ¶20.) The mere fact that Cerone sold insurance to Local 727’s Health and Welfare Fund at best establishes an at-will employment and creates no property interest in continued employment. Accordingly, plaintiffs had no property interest in their employment as attorneys for Local 738, or Local 726, or as insurance brokers to Local 727’s Health and Welfare Fund, and therefore plaintiffs’ Fifth Amendment claim is meritless.
 

 Plaintiffs further claim that their Sixth Amendment rights were violated. Plaintiffs argue that they were denied the “right to confront one’s accuser.” (Amended Complaint ¶ 47.)
 

 Plaintiffs’ claim is entirely meritless because the Sixth Amendment only affords to a criminal defendant the right to confront his or her accuser and plaintiffs were not criminal defendants during the events at issue in the instant litigation. In relevant part, the Sixth Amendment to the United States Constitution states: “In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” U.S. Const., amend. VI. The protections afforded by this Amendment are “specifically limited to ‘criminal prosecutions.’ ”
 
 Hannah v. Larche,
 
 363 U.S. 420, 440 n. 16, 80 S.Ct. 1502, 1513 n. 16, 4 L.Ed.2d 1307 (1960);
 
 see also Wolff v. McDonnell,
 
 418 U.S. 539, 567-68, 94 S.Ct. 2963, 2980-81, 41 L.Ed.2d 935 (1974) (prisoners in disciplinary cases have no Sixth Amendment right to confront witnesses against them).
 

 In the instant case, plaintiffs’ Sixth Amendment claim is meritless because the United States Constitution does not afford a plaintiff any right to confront witnesses in an internal, union disciplinary investigation. Plaintiffs claim that they were not afforded the opportunity to challenge persons who alleged that Cerone had ties to members of organized crime. Yet, the allegations at issue were not raised as part of a criminal prosecution, but rather, these allegation were raised as part of an investigation by officers appointed pursuant to the Consent Decree, which is akin to an internal, union disciplinary investigation. Because the allegations at issue were not raised as part of a criminal proceeding, plaintiffs had no Sixth Amendment right to confront their accusers, and accordingly plaintiffs’ Sixth Amendment claim is meritless.
 

 S. Plaintiffs’ Tortious-Interference-WithrContract Claim Against Carberry, Lacey, and the IBT Is Meritless
 

 Plaintiffs allege that the Government, Car-berry, Lacey, and the IBT “impermissibly
 
 *1057
 
 and tortiously interfere with Plaintiffs’ contract, business relationships and prospective relationships.” (Amended Complaint ¶ 55.) Plaintiffs claim that these defendants improperly informed Local 738, Local 726, and Local 727’s Health and Welfare Fund that each would be violating the terms of the Consent Decree if it continued to do business with plaintiffs, who allegedly had ties to members of organized crime. Plaintiffs claim that such actions tortiously interfered not only with their current business relationships with Local 738, Local 726, and Local 727’s Health and Welfare Fund, but also interfered with plaintiffs’ prospective employment.
 

 Carberry, Lacey, and the IBT each asserts that plaintiffs have failed to state a claim for either tortious interference with contract or tortious interference with prospective employment. Carberry asserts that plaintiffs’ claims are deficient as a matter of law because plaintiffs cannot show that Carberry’s conduct was in any way wrongful. (Carberry Memo at 10.) Carberry argues that plaintiffs acknowledge that Carberry “was performing investigative duties under the Consent [Decree]” and therefore “no claim for interference with contract could exist.”
 
 Id.
 
 (citations omitted). Because Lacey “adopts the legal Argument set forth in the Carberry Memorandum,” (Lacey Memo at 3), Lacey raises the same argument. Although the IBT apparently believes that plaintiffs have failed to state a claim for either tortious interference with contract or tortious interference with prospective employment, the IBT has not seen fit to provide this Court with any argument in support of its position. Although the IBT requests that this Court dismiss plaintiffs’ Amended Complaint with prejudice, (IBT Defendants’ Memo at 13), the IBT’s memorandum of law entirely fails to discuss these two claims.
 

 It should be noted that the Government also asserts that this Court should dismiss plaintiffs’ claims of tortious interference with contract and tortious interference with prospective employment. Unlike the other defendants, however, the Government does not argue that this Court should dismiss these claims for failure to state a claim. Rather, the Government argues that this Court lacks jurisdiction to hear these claims as raised against the Government because the Government has not waived sovereign immunity for such claims. The Government’s argument is addressed in the following section of this Opinion and Order.
 

 In analyzing plaintiffs’ claims, this Court must apply Illinois law because: (1) plaintiffs are citizen of the state of Illinois; (2) Local 738, Local 726, and Local 727’s Health & Welfare Fund are each located in Illinois; (3) plaintiffs conducted business with Local 738, Local 726, and Local 727’s Health and Welfare Fund in Illinois; and (4) the alleged tortious interference with contract and alleged tortious interference with plaintiffs’ business relations occurred when defendants allegedly contacted Local 738, Local 726, and Local 727’s Health and Welfare Fund in the state of Illinois and informed each of Cerone’s alleged ties to members of organized crime.
 

 Under Illinois law, “[t]o establish a valid claim of intentional interference with an existing contract right, a plaintiff must prove: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant’s awareness of this contractual relation; (3) the defendant’s intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other caused by the defendant’s wrongful conduct; and (5) damages.”
 
 Hindo v. University of Health Sciences,
 
 237 Ill.App.3d 453, 178 Ill.Dec. 207, 212-13, 604 N.E.2d 463, 468-69 (1992),
 
 app. denied,
 
 149 Ill.2d 649, 183 Ill.Dec. 861, 612 N.E.2d 513 (1993);
 
 see also Prudential Ins. Co. v. Van Matre,
 
 158 Ill.App.3d 298, 110 Ill.Dec. 563, 567, 511 N.E.2d 740, 744 (quoting
 
 Belden Corp. v. InterNorth Inc.,
 
 90 Ill.App.3d 547, 45 Ill.Dec. 765, 768, 413 N.E.2d 98, 101 (1980)),
 
 app. denied,
 
 117 Ill.2d 553, 115 Ill. Dec. 409, 517 N.E.2d 1095 (1987). Illinois law appears to be unsettled on the issue of whether an at-wiU employee may bring a cause of action for tortious interference with contract. Some Illinois courts have held that at-wiU employee may bring such an action.
 
 Prudential,
 
 110 Ill.Dec. at 567, 511 N.E.2d at 744 (“Illinois courts have long recognized
 
 *1058
 
 that causing the termination of a contract terminable at will intentionally and without just cause is actionable.”) (citation omitted);
 
 see also Getschow v. Commonwealth Edison Co.,
 
 111 Ill.App.3d 522, 67 Ill.Dec. 343, 348, 444 N.E.2d 579, 584 (1982),
 
 judgment affd in part, reversed in part,
 
 99 Ill.2d 528, 77 Ill.Dec. 83, 459 N.E.2d 1332 (1984). Other Illinois courts, however, have found that an at-will employee may only bring a cause of action for tortious interference with prospective economic advantage.
 
 Anderson v. Anchor Organization for Health Maintenance,
 
 274 Ill.App.3d 1001, 211 Ill.Dec. 213, 223, 654 N.E.2d 675, 685 (1995) (“An action for tortious interference with a contract terminable at will is classified as one for intentional interference with prospective economic advantage.”) (citing
 
 Fellhauer v. City of Geneva,
 
 142 Ill.2d 495, 154 Ill.Dec. 649, 568 N.E.2d 870 (1991)).
 

 Moreover, Illinois courts also appear to disagree as to whether a plaintiff must establish that a defendant’s conduct was unjustified or whether a plaintiff must establish that a defendant’s conduct was malicious.
 
 Compare Hindo,
 
 178 Ill.Dec. at 212-13, 604 N.E.2d at 468-69 (defendant’s conduct must be unjustified)
 
 and Prudential,
 
 110 Ill.Dec. at 567, 511 N.E.2d at 744 (same)
 
 with Resudek v. Sberna,
 
 132 Ill.App.3d 783, 87 Ill.Dec. 663, 668, 477 N.E.2d 789, 794 (1985) (“There must be a showing of malice.”) (citations omitted)
 
 and Audition Div. Ltd. v. Better Business Bureau,
 
 120 Ill.App.3d 254, 75 Ill. Dec. 947, 952, 458 N.E.2d 115, 120 (same),
 
 order affd by,
 
 120 Ill.App.3d 254, 75 Ill.Dec. 947, 458 N.E.2d 115 (1983)
 
 and Getschow,
 
 67 Ill.Dec. at 348, 444 N.E.2d at 584 (“the gist of the action is the malicious interference with contractual relations between plaintiff and another”). The
 
 Prudential
 
 court pointed out, however, that the apparent difference between the “unjustified standard” and the “malice standard” was of little import because “‘malice’ in this context means only the intent to interfere without sufficient justification.”
 
 Prudential,
 
 110 Ill.Dec. at 567, 511 N.E.2d at 744;
 
 see also Getschow,
 
 67 Ill.Dec. at 348, 444 N.E.2d at 584 (“It is also well settled that ‘malice,’ when used in this context, does not require a showing of ill will, hostility or an intent to injure; plaintiff need only show that the defendant acted intentionally and without just cause.”) (citations omitted).
 

 In the instant case, assuming that plaintiffs can bring a claim for tortious interference with an at-will employment, plaintiffs’ claim is, nonetheless, meritless because plaintiffs cannot demonstrate that any of the defendants’ conduct was either unjustified or malicious. As defendant Carberry correctly argues, plaintiffs concede that Carberry and Lacey acted pursuant to their authority under the Consent Decree. (Amended Complaints 6 (stating that Carberry was “acting as the Investigations Officer ... pursuant to the Consent Decree”));
 
 id.
 
 ¶ 7 (stating that Lacey was “acting as the Independent Administrator ... pursuant to the Consent Decree”);
 
 id.
 
 ¶31 (stating that “in or about January 1993, Defendant Charles M Carberry, acting pursuant to his authority aforesaid ... initiated an investigation regarding Plaintiff Jack P. Cerone”). Moreover, plaintiffs admit that Cerone knowingly associated with his father John Phillip Cerone, and plaintiffs concede that John Phillip Cerone has been identified as a member of organized crime.
 
 Id.
 
 ¶23. Plaintiffs’ Amended Complaint states: “On January 26, 1986, John Phillip Cerone was convicted of conspiracy to promote racketeering enterprise [sic], and interstate fraud or communication in aid of racketeering, and has been identified as a member of La Cosa Nostra.”
 
 Id.
 
 As officers appointed pursuant to the Consent Decree, both Carberry and Lacey had an obligation to use their best efforts to rid the IBT of the hideous influence of organized crime. In the instant case, plaintiffs’ Amended Complaint makes it very clear that both Carberry and Lacey were acting pursuant to their authority under the Consent Decree and that both Carberry and Lacey were using this authority to sever relationships between three IBT subordinate bodies and Cerone, who admittedly had ties with a person who has been identified as a member of organized crime. Thus, this Court finds that Carberry’s and Lacey’s actions were not only appropriate, but were mandated by the obligations of their respective offices under the Consent Decree. Accordingly, plaintiffs’ tortious-in
 
 *1059
 
 terference-with-contract claim is meritless because plaintiffs cannot establish that Car-berry’s or Lacey’s actions were either unjustified or malicious.
 

 Similarly, the Consent Decree imposes on the IBT, itself, the obligation of using its best efforts to rid itself of the influence of organized crime. To further the goal of ridding the IBT of the influence of organized crime, it is essential that the IBT cooperate with the officers appointed pursuant to the Consent Decree. Again, this Court finds that the actions that the IBT allegedly undertook were not only appropriate, but were mandated by the IBT’s obligation under the Consent Decree to rid itself of the corrupting influence of organized crime. Thus, plaintiffs’ tortious-interference-with-contract claim is meritless because plaintiffs cannot establish that the IBT’s actions were either unjustified or malicious.
 

 Plaintiffs’ claim that Carberry, Lacey, and the IBT tortiously interfered with plaintiffs’ prospective employment is equally unavailing. In order to prevail on such a claim, plaintiffs must demonstrate that defendants’ actions were either unjustified or malicious.
 
 See Audition,
 
 75 Ill.Dec. at 951, 458 N.E.2d at 119. As the foregoing discussion makes clear, plaintiffs cannot establish that Carberry’s, Lacey’s, or the IBT’s actions were unjustified or malicious, and accordingly plaintiffs’ tortious-interference-with-prospeetive-employment claim fails as a matter of law.
 

 Jh Sovereign Immunity Bars Plaintiffs From Bringing Tortious-Interference Claims Against the Government
 

 Pursuant to Rule 12(b)(1), the Government moves this Court to dismiss plaintiffs’ claims of tortious interference with contract and tortious interference with prospective employment. (Govt.Memo at 13.) The Government argues that this Court lacks subject matter jurisdiction to hear such claims because these claims are barred by sovereign immunity.
 

 The law is well settled that “[t]he United States, as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court’s jurisdiction to entertain the suit.”
 
 United States v. Mitchell,
 
 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (internal quotation omitted),
 
 reh’g denied,
 
 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980);
 
 see also United States v. Testan,
 
 424 U.S. 392, 399, 96 S.Ct. 948, 953-54, 47 L.Ed.2d 114 (1976). In assessing whether the United States has consented to be sued, the Supreme Court has instructed that “[a] waiver of sovereign immunity ‘cannot be implied but must be unequivocally expressed.’ ”
 
 Mitchell,
 
 445 U.S. at 538, 100 S.Ct. at 1351 (quoting
 
 United States v. King,
 
 395 U.S. 1, 4, 89 S.Ct. 1501, 1502-03, 23 L.Ed.2d 52 (1969)).
 

 Plaintiffs’ claims that the Government tortiously interfered with plaintiffs’ contracts and tortiously interfered with plaintiffs’ prospective employment must be dismissed because the United States has not waived sovereign immunity for such claims. Accordingly, this Court lacks subject matter jurisdiction to hear such claims against the Government, and plaintiffs’ claims must be dismissed.
 

 5. Plaintiffs’ Claims Against IBT Local 727 Health and Welfare Fund Are Dismissed Because These Claims Are Frivolous
 

 Although the foregoing discussion demonstrates that all of the claims that plaintiffs have raised against the Government, Carberry, Lacey, the IBT, IBT Local 738, and IBT Local 726 must be dismissed, IBT Local 727 Health and Welfare Fund has not filed a motion to dismiss plaintiffs’ Amended Complaint. In fact, Local 727’s Health and Welfare Fund has filed no response to plaintiffs’ Amended Complaint. When Chambers contacted Local 727’s Health and Welfare Fund’s counsel to inquire whether any submission was forthcoming, counsel represented to Chambers that his client had declined to file any papers in response to plaintiffs’ Amended Complaint because plaintiffs had failed to serve his client in accordance with the Federal Rules of Civil Procedure.
 

 Because the claims that plaintiffs raise against Local 727’s Health and Welfare Fund are frivolous, the interests of judicial econo
 
 *1060
 
 my militate in favor of dismissing these claims
 
 sua sponte
 
 in the instant Opinion and Order. Plaintiffs allege the same constitutional violations against Local 727’s Health and Welfare Fund as plaintiffs raised against the other defendants in the instant action.
 
 [4]
 
 As previously discussed, plaintiffs’ constitutional claims are meritless because officers appointed pursuant to the Consent Decree are not state actors and because plaintiffs’ constitutional claims are meritless. Accordingly, this Court holds that plaintiffs’ claims against Local 727’s Health and Welfare Fund should be dismissed.
 

 CONCLUSION
 

 The Government’s motion to dismiss plaintiffs’ Amended Complaint is GRANTED.
 

 Carberry’s motion to dismiss plaintiffs’ Amended Complaint is GRANTED.
 

 Lacey’s motion to dismiss plaintiffs’ Amended Complaint is GRANTED.
 

 The IBT’s motion to dismiss plaintiffs’ Amended Complaint is GRANTED.
 

 IBT Local 738’s motion to dismiss plaintiffs’ Amended Complaint is GRANTED.
 

 IBT Local 726’s motion to dismiss plaintiffs’ Amended Complaint is GRANTED.
 

 Plaintiffs’ claims against IBT Local 727 Health and Welfare Fund are
 
 sua sponte
 
 DISMISSED.
 

 Plaintiffs’ Amended Complaint is DISMISSED WITH PREJUDICE.
 

 SO ORDERED.
 

 [1]
 

 . The IBT, Local 738, and Local 726 have filed one brief in support of these three defendants’ respective motions to dismiss. This Opinion and Order refers to these defendants collectively as "the IBT Defendants.”
 

 [2]
 

 .
 
 Plaintiffs fail to explain why the instant suit involves Lacey in his capacity as Independent Administrator. As previously mentioned, the Consent Decree sets forth a two-phased imple
 
 *1050
 
 mentation of its various remedial provisions. In the first phase, the Independent Administrator was appointed to oversee the Consent Decree's provisions. In the second phase, the Independent Administrator was replaced by the IRB. The IRB replaced the Independent Administrator in 1992.
 
 See United States v. International Bhd. of Teamsters,
 
 803 F.Supp. 806, 808-09 (S.D.N.Y. 1992),
 
 affd
 
 12 F.3d 360 (2d Cir.1993). After reviewing plaintiffs' Amended Complaint, it is apparent that the events that form the basis of plaintiffs' claims transpired in 1993. Thus, it is unclear why plaintiffs bring suit against Lacey as Independent Administrator for events that occurred when the office of Independent Administrator no longer existed. Moreover, despite the fact that defendant Lacey submitted a brief entitled “Memorandum in Support of Independent Administrator’s Motion To Dismiss,” Lacey has not explained how the instant suit relates to any actions that Lacey may have taken as Independent Administrator. (Memorandum in Support of Independent Administrator's Motion To Dismiss ("Lacey Memo”) (March 29, 1996).)
 

 Because Lacey is a member of the IRB, and served as a member of the IRB dining the time of the events that form the basis of plaintiffs’ Amended Complaint, plaintiffs’ claims may be interpreted very liberally as raising a challenge to actions that Lacey allegedly took as a member of (he IRB. For the purposes of the instant Opinion and Order, the distinction between Lacey's alleged actions as Independent Administrator and his actions as a member of the IRB are of no moment because plaintiffs' claims are entirely meritless. In the interest of uniformity, this Court will continue to use the term that both plaintiffs and Lacey selected, and thus, this Court refers to Lacey throughout this Opinion and Order as "the Independent Administrator."
 

 [3]
 

 . This Court cites to the page number of plaintiffs’ Amended Complaint, instead of the paragraph number, because plaintiffs misnumbered the paragraphs of their Amended Complaint that follow paragraph 55.
 

 [4]
 

 . Plaintiffs do not allege that Local 727’s Health and Welfare Fund either tortiously interfered with plaintiffs' contracts or tortiously interfered with plaintiffs’ prospective employment.